1  **Brian H. Gunn (SBN 192594)**
   *bhgunn@wolfewyman.com*
2  **Joshua M. Bryan (SBN 225230)**
   *jmbryan@wolfewyman.com*
3  **WOLFE & WYMAN LLP**
   **980 9th Street, Suite 2350**
4  **Sacramento, California 95814**
   **Telephone:  (916) 912-4700**
5  **Facsimile:   (916) 329-8905**

6  **Attorneys for Defendant**
   **PNC BANK, N.A.**
7

8           **UNITED STATES DISTRICT COURT – EASTERN DISTRICT**

9                      **COUNTY OF SACRAMENTO**

10

11  GENET HABTEMARIAM,                  | Case No.: 3

12          Plaintiff,
                                         | **NOTICE OF REMOVAL OF ACTION**
13  v.                                   | **UNDER 28 U.S.C. § 1441(b)**

14  VIDA CAPITAL GROUP, LLC; US MORTGAGE | **[FEDERAL QUESTION]**
    RESOLUTION; PNC BAK, NATIONAL
15  ASSOCIATION S/B/M NATIONAL CITY
    MORTGAGE and DOES 1 to 50, inclusive,
16
            Defendants.
17                                       | Action Filed:  April 19, 2016

18

19  **TO THE CLERK OF THE ABOVE ENTITLED COURT:**

20      PLEASE TAKE NOTICE that Defendant PNC BANK, N.A., ("Removing Defendant")

21  hereby removes to this Court the state court action described below pursuant to 28 U.S.C. Section

22  1441(b) *et seq.*

23      1.      On April 19, 2016, an action was commenced in the Superior Court of the State of

24  California in and for the County of Sacramento, entitled Habtemariam V. Vida Capital Group, LLC,

25  et al., as case number 34-2016-00193289.

26      2.      Attached as **Exhibit** A is a true and correct copy of Plaintiff's Complaint in this

27  matter.

28  ///

---

                                    1
                            **NOTICE OF REMOVAL**

2440945.1

**1**  3. Attached as **Exhibit B** is a true and correct copy of the court docket which reflects the

**2**  filing of the Complaint.

**3**  4. Attached as **Exhibit C** is a true and correct copy of the proof of service of the action

**4**  on PNC via substitute service.

**5**  5. This Notice of Removal is timely under 28 U.S.C. Section 1446(b) because it was

**6**  filed within 30 days of service of the Complaint on PNC in this matter.

**7**  6. This action is a civil action of which this Court has original jurisdiction under 28

**8**  U.S.C. Section 1331, and is one which may be removed to this Court by a defendant pursuant to the

**9**  provisions of 28 U.S.C. Section 1441(b) in that it arises under Federal Law and regulations

**10**  interpreting the effect of issuing an IRS Form 1099-C as it pertains to the existence of a debt.   (See

**11**  26 U.S.C. and relation regulations). Supplemental jurisdiction exists with respect to any

**12**  remaining claims pursuant to 28 U.S.C. § 1367.

**13**  7. The United States District Court for the Eastern District of California has jurisdiction

**14**  in this civil action as the real property that is the subject of the Complaint is located in the County of

**15**  Sacramento.  Moreover, the Superior Court of California for the County of Sacramento is located

**16**  within the Eastern District of California.  (*See* 28 U.S.C. § 84(a).)  Thus venue is proper in this Court

**17**  because it is the "district and division embracing the place where such action is pending."  28 U.S.C.

**18**  § 1441(a).

**19**  8. Pursuant to Civil Local Rule 3-2(d), the Division to which this civil action should be

**20**  assigned is the Sacramento Division because the location of the real property that is the subject of

**21**  this action is in the City of Oakland and County of Eastern.

**22**  9. Pursuant to 28 U.S.C. Section 1446(a), Removing Defendant filed this Notice of

**23**  Removal in the District Court of the United States for the District and Division within which the

**24**  state court action is pending.

**25**  10. Pursuant to 28 U.S.C Section 1446(d), Removing Defendant will promptly give

**26**  written notice of the removal to all adverse parties and will file a copy of the notice with the clerk of

**27**  the Sacramento County Superior Court.

**28**  ///

2440945.1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

1    11.    WHEREFORE, Removing Defendant hereby removes Sacramento County Superior

2  Court Case number 34-2016- 00193289 to the United States District Court for the Eastern District of

3  California, Sacramento Division.

4

5  DATED: May 31, 2016                    WOLFE & WYMAN LLP

6

7                                          By: //s// *JOSHUA M. BRYAN*

8                                              BRIAN H. GUNN
                                               JOSHUA M. BRYAN
9                                          Attorneys for Defendant
                                           **PNC BANK, N.A.**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

3

**NOTICE OF REMOVAL**

# EXHIBIT A

Ted A. Greene (SBN 220392)
Erin Stratte (SBN 284698)
LAW OFFICES OF TED A. GREENE, INC.
1912 F Street, Ste. 110
Sacramento, CA 95811
Telephone: (916) 442-6400
Facsimile: (916) 266-9285
Attorneys for Plaintiff
Genet Habtemariam

**FILED**
Superior Court Of California,
Sacramento
04/19/2016
cleurgans
By _____ , Deputy
Case Number:
**34-2016-00193289**

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SACRAMENTO

| | |
|---|---|
| GENET HABTEMARIAM, | Case No.: |
| Plaintiff, | **COMPLAINT FOR WRONGFUL FORECLOSURE & QUIET TITLE:** |
| v. | |
| VIDA CAPITAL GROUP, LLC; US MORTGAGE RESOLUTION; PNC BANK, NATIONAL ASSOCIATION S/B/M NATIONAL CITY MORTGAGE; and DOES 1 to 50, Inclusive, | **1. Vacate & Set Aside Sale of Real Estate Under Civil Code Section 2924;** |
| | **2. Cancellation of Recorded Instruments;** |
| Defendants. | **3. Unfair Business Practices Violation of Bus. & Prof. Code § 17200, et seq.;** |
| | **4. Negligence; and,** |
| | **5. Declaratory Relief.** |
| | **DEMAND FOR JURY TRIAL** |

1    Plaintiff GENET HABTEMARIAM ("Plaintiff"), by and through counsel, for her
2 || Complaint against the defendants, upon information and belief allege as follows:

3                              **INTRODUCTION**

4      1.      This is a quiet title case based on the wrongful foreclosure of a "zombie" debt
5 || second mortgage that was discharged pursuant to a 1099-C "cancellation of debt" issued to
6 || Plaintiff and reported to the Internal Revenue Service as income in 2010. This cancellation of
7 || debt was legally in effect at the time of foreclosure, rendering the debt dead. Yet the
8 || foreclosing party wrongfully attempted to resurrect the dead debt by exercising its power of sale
9 || on the subject property under color of title even though it did not actually hold any beneficial
10 || interest under which to exercise a power of sale legally.

11      2.      Plaintiff GENET HABTEMARIAM is a hard working homeowner who has lived
12 || in this home as her primary residence since 2001. In 2010, Plaintiff was seeking a loan
13 || modification to reduce the interest rate on the second mortgage. Instead, out of the blue, she
14 || received a 1099-C "cancellation of debt" from Defendant PNC BANK, NATIONAL
15 || ASSOCIATION S/B/M NATIONAL CITY MORTGAGE ("PNC NATIONAL") cancelling her
16 || debt on this second mortgage and releasing her from the obligation to repay the debt. PNC
17 || NATIONAL received a benefit under a governmental program for voluntarily cancelling this
18 || debt. Plaintiff reported this debt cancellation as income to the Internal Revenue Service. This
19 || worthless Deed of Trust was then sold and resold to Defendant VIDA CAPITAL GROUP,
20 || LLC, ("VIDA").

21      3.      Even though this debt is cancelled by law, and no beneficial interest remains in
22 || the original Deed of Trust, the most recent purchaser of this "zombie" debt, Defendant VIDA
23 || wrongfully foreclosed on the property on February 10, 2016, after being informed of the
24 || discharged status of the debt, and that they legally did not have the right to foreclose because
25 || they held no beneficial interest in their assigned Deed of Trust. This wrongful foreclosure
26 || under color of title resulted in Plaintiff's damaged credit, emotional distress, and having to incur
27 || costs related to defending her right to hold possession and title in her home.

28 _____

1   4.   As a result of the complete disregard of law by Defendants, Plaintiff GENET
2   HABTEMARIAM is now forced to incur the substantial cost of seeking the assistance of the
3   Courts to enforce her rights in order to keep her family home.

4                                   **PARTIES**

5   5.   Plaintiff GENET HABTEMARIAM is an individual and resident of Sacramento,
6   California. Plaintiff brings this action against the defendants for damages and harm resulting
7   from the defendants' wrongful attempt to resurrect a worthless Deed of Trust, i.e., her second
8   residential mortgage and Defendant VIDA'S subsequent wrongful foreclosure on the subject
9   property without the legal right to exercise a power of sale. The cancelled debt from Plaintiff's
10  second residential mortgage concerns the property located at 7 Shipman Court, Sacramento,
11  California 95823 ("subject property").

12  6.   Defendant PNC BANK, NATIONAL ASSOCIATION S/B/M NATIONAL
13  CITY MORTGAGE ("PNC NATIONAL") is a Pennsylvania corporation with its headquarters
14  in Pittsburgh, Pennsylvania, who regularly does business in California. PNC NATIONAL is the
15  originator of the second mortgage on the subject property, recorded on April 17, 2007. PNC
16  NATIONAL voluntarily issued a 1099-C on the second mortgage debt on June 29, 2010. This
17  cancellation of debt was in no way solicited by Plaintiff. PNC NATIONAL received a benefit
18  under a governmental program for issuing this cancellation of debt to Plaintiff.

19  7.   Defendant US MORTGAGE RESOLUTION ("US MORTGAGE") is a
20  Pennsylvania corporation with its headquarters in King of Prussia, Pennsylvania, and is a
21  predecessor owner of the worthless Deed of Trust, i.e., the discharged second mortgage debt.
22  US MORTGAGE purchased the worthless Deed of Trust from PNC NATIONAL.

23  8.   Defendant, VIDA CAPITAL GROUP, LLC, ("VIDA") is a California
24  corporation with its headquarters in Palo Alto, California. VIDA purchased the worthless Deed
25  of Trust from Defendant US MORTGAGE RESOLUTION and is the foreclosing party.
26  9.   A first mortgage is recorded on the subject property, recorded on April 4, 2007,
27  by non-party Gateway Bank, a New Jersey corporation, headquartered in Ewing, New Jersey,
28

COMPLAINT FOR WRONGFUL FORECLOSURE & QUIET TITLE

3

1 | regularly doing business in California.

2 | 10. Plaintiff is ignorant of the true names and capacities of the defendants sued
3 | herein under the fictitious names Does 1 through 50, inclusive, and Plaintiff will amend this
4 | Complaint to allege such names and capacities as soon as they are ascertained. Each of said
5 | fictitiously named defendants is responsible in some manner for the wrongful acts complained
6 | of herein.

7 | 11. Each defendant was the agent and employee of each and every other defendant
8 | and in doing, saying, or omitting to say the things alleged, was acting within the course and
9 | scope of such agency and with the permission and consent of each of the other defendants.

10 | 12. Each defendant aided and abetted, encouraged, and rendered substantial
11 | assistance to the other defendants in breaching their obligations to Plaintiff. In taking action to
12 | aid and abet and substantially assist the commissions of these wrongful acts and other
13 | wrongdoings complained of, each defendant acted with an awareness of its primary wrongdoing
14 | and realized that its conduct would substantially assist the accomplishment of the wrongful
15 | conduct, wrongful goals, and wrongdoing.

16 | 13. Each defendant knowingly and willfully conspired, engaged in a common
17 | enterprise, and engaged in a common course of conduct to accomplish the wrongs herein. The
18 | purpose and effect of the conspiracy, common enterprise, and common course of conduct
19 | complained of was, inter alia, to financially benefit defendants at the expense of Plaintiff by
20 | engaging in the wrongful conduct. Defendants accomplished their conspiracy, common
21 | enterprise, and common course of conduct by misrepresenting and concealing material
22 | information regarding the servicing of loans, and by taking steps and making statements in
23 | furtherance of their collective interest in violation of law. Each defendant was a direct,
24 | necessary and substantial participant in the conspiracy, common enterprise and common course
25 | of conduct herein, and was aware of its overall contribution to and furtherance thereof.
26 | Defendants' wrongful acts include, inter alia, all of the acts that each of them is alleged to have
27 | committed in furtherance of the wrongful conduct herein.

28

COMPLAINT FOR WRONGFUL FORECLOSURE & QUIET TITLE

4

1 **JURISDICTION AND VENUE**

2    14.    Pursuant to Code of Civil Procedure section 392(a), venue is proper in this Court

3 because the situs of the real property that is the subject of this litigation is in this County, the

4 transactions occurred within this County, the events transpired within this County, the parties

5 and witnesses reside within this County, the evidence, including the defendants' business

6 records, is located within this County, and the defendants regularly conduct business within this

7 County.

8    15.    The defendants engaged in business within the State of California, which

9 business is related to the events which give rise to the instant lawsuit. The subject events

10 transpired within the State of California. The defendants have "sufficient minimum contacts"

11 with the State of California such that this Court's exercise of personal jurisdiction over the

12 defendants herein "[does] not offend traditional notions of fair play and substantial justice."

13 **FACTUAL BACKGROUND**

14    16.    Plaintiff GENET HABTEMARIAM purchased the subject property 7 Shipman

15 Court, Sacramento, California 95823, in 2001. She used a purchase money mortgage to buy the

16 property. In 2007, she refinanced the home with non-party Gateway Bank, FSB, who recorded

17 a first mortgage on the home on April 4, 2007. A true and correct copy of this first in time first

18 in right Deed of Trust is attached hereto as Exhibit A.

19    17.    Plaintiff is an upstanding citizen who has lived in and owned the home for over

20 fifteen years and it was at all times her primary residence.

21    18.    Plaintiff took out a second mortgage on the property with Defendant PNC

22 NATIONAL, which was recorded on the property on April 17, 2007. At the time the mortgage

23 was taken out this entities name was National City Bank, which later merged into PNC

24 NATIONAL. A true and correct copy of this second in time second in right Deed of Trust is

25 attached hereto as Exhibit B.

26    19.    Defendant PNC NATIONAL, cancelled the second mortgage on the property by

27 issuing a 1099-C to Plaintiff on June 29, 2010. A true and correct copy of this 1099-C

28

1 "cancellation of debt" is attached hereto as Exhibit C. The 1099-C is a document titled

2 "cancellation of debt". It has the legal effect of cancelling the debt. The 1099-C was issued for

3 the same dollar amount as was owed on this second mortgage.

4     20.      Because a 1099-C is a legal document intended to report tax related issues to the

5 government, it may only be amended by the issuing party, Defendant PNC NATIONAL.

6 Defendant PNC NATIONAL has not amended this 1099-C at the time of filing of this lawsuit.

7     21.      Defendant PNC NATIONAL did not issue an amended 1099-C to Plaintiff and

8 this 1099-C at the time of the foreclosure by Defendant VIDA still had the force and effect of

9 cancelling the indebtedness on the Deed of Trust recorded by Defendant PNC NATIONAL,

10 Exhibit B. With no beneficial interest remaining on the Deed of Trust, there was no power of

11 sale that could legally be exercised by any holder of this note.

12     22.      Plaintiff declared the income that resulted from the 1099-C in 2010 to the

13 Internal Revenue Service, that same year the debt was discharged.

14     23.      Defendant PNC NATIONAL, neglected to record a release of lien on the

15 property even though it discharged the debt. However, this did not effect to resurrect the power

16 of sale on the note, as there was no beneficial interest remaining due to the cancellation of debt.

17 Specifically, this debt was legally dead, regardless of the remaining Deed of Trust on the

18 property.

19     24.      PNC NATIONAL, who issued a 1099-C, sold its interest in the Deed of Trust,

20 which was zero dollars, to Defendant US MORTGAGE. A true and correct copy of the

21 Assignment from PNC NATIONAL to US MORTGAGE is attached hereto as Exhibit D.

22     25.      Defendant US MORTGAGE sold its interest in the Deed of Trust, which was

23 zero dollars, to Defendant VIDA. A true and correct copy of the Assignment from US

24 MORTGAGE to VIDA is attached hereto as Exhibit E.

25     26.      Once a debt is cancelled by the debt holder with the Internal Revenue Service,

26 the debt holder may not also attempt to collect.

27     27.      Defendant VIDA contacted Plaintiff in early 2015 in an attempt to collect on the

28

1  cancelled debt listed in the Deed of Trust it purchased from US MORTGAGE. The debt was
2  still cancelled by operation of law, yet Defendant VIDA wrongfully attempted collection.

3      28.    Plaintiff provided a copy of the valid and still in full force and effect cancellation
4  of debt form to Defendant VIDA, and explained that the debt was not collectable, and that
5  Defendant VIDA held no beneficial interest in the Deed of Trust recorded by PNC
6  NATIONAL.

7      ·· 29.    Plaintiff further corresponded with Defendant VIDA that they did not have the
8  legal right to exercise their power of sale under the Deed of Trust recorded by PNC
9  NATIONAL because they held no beneficial interest in that document as the debt was not
10  collectable by operation of law, with no beneficial interest remaining in their assigned Deed of
11  Trust.

12      30.    Defendant VIDA recorded a Notice of Default without the legal right against
13  Plaintiff on the subject property on September 22, 2015. Defendant VIDA damaged Plaintiff's
14  credit in the process.

15      31.    Defendant VIDA recorded a Notice of Sale against Plaintiff on the subject
16  property on January 15, 2016, without the legal right, further damaging Plaintiff's credit.

17      32.    Defendant VIDA was on notice that it did not hold any beneficial interest in the
18  subject property and that it did not have the legal right to collect on the cancelled debt before it
19  initiated foreclosure proceedings against Plaintiff on the subject property.

20      33.    Defendant VIDA at no time had the legal right to initiate foreclosure proceedings
21  on the subject property against Plaintiff, yet it proceeded anyway in violation of law.

22      34.    At all times Defendant VIDA acted only under the color of title, which is acting
23  as if the title holds the force and effect that it purports to on its face, even though operation of
24  law has rendered the title unenforceable.

25      35.    Defendant VIDA did not take the subject property pursuant to a cash purchase as
26  an innocent third party, but instead directed its trustee, to deed the subject property to itself,
27  wrongfully claiming it held a power of sale, when in fact it did not.

28  

COMPLAINT FOR WRONGFUL FORECLOSURE & QUIET TITLE

7

1    36.    This Trustee's Deed Upon Sale occurred on February 10, 2016, and was

2    recorded on the subject property wrongfully on February 16, 2016, further damaging Plaintiff's

3    credit and threatening Plaintiff's right to hold and possess the subject property that is rightfully

4    hers by law.

5    37.    Defendant VIDA did not purchase the home, but took the home back through

6    non-judicial foreclosure after failing to follow the law regarding the cancelled debt in violation

7    of Plaintiff's rights. Thus Defendant VIDA is not a bona fide purchaser under law and does not

8    presumptively hold title under Civil Code section 2924.

9    38.    Plaintiff has since been served with a three-day notice to quit the premises, and

10   Plaintiff by and through her counsel has contacted Defendant VIDA, by and though its counsel

11   to alert them to the title dispute.

12   39.    Defendant VIDA does not presumptively hold valid title under Civil Code

13   Section 2924, as it was on notice of the irregularities in the title transfer process, and it held no

14   beneficial interest in the Deed of Trust at the time of sale, when it lacked the authority to

15   exercise a power of sale under law.

16   40.    Unless and until title is litigated, Defendant VIDA lacks standing to bring an

17   Unlawful Detainer action against Plaintiff.

18   41.    Should Defendant VIDA file an Unlawful Detainer action, Plaintiff will seek

19   consolidation with this unlimited civil case, which is proper, so that this quiet title action may

20   be resolved prior to eviction proceedings.

21                              **FIRST CAUSE OF ACTION**

22                    Vacate & Set Aside Sale of Real Estate Under Civil Code Section 2924

23                                  (Against Defendant VIDA)

24   42.    Plaintiff incorporates herein by this reference each and every allegation set forth

25   above, as though fully set forth herein.

26   43.    Defendant VIDA did not hold a beneficial interest in the subject property at the

27   time of the non-judicial foreclosure and thus it did not hold a power of sale under Civil Code

28

COMPLAINT FOR WRONGFUL FORECLOSURE & QUIET TITLE

8

1 | section 2924.

2 |    44.    Further, Civil Code section 882.030 does not require that a release of lien be
3 | recorded after a cancellation of debt is issued. Additionally, under this section, the lack of a
4 | release of lien does not effect to grant any right to the Deed of Trust after the process of law has
5 | rendered the Deed of Trust cancelled. See Civil Code section 882.030 "recording of a
6 | certificate of satisfaction, reconveyance, release, or other discharge is not necessary to terminate
7 | or evidence the termination of the security interest".

8 |    45.    Defendant PNC NATIONAL cancelled Plaintiff's indebtedness under the second
9 | mortgage for the full amount on June 29, 2010, and issued a 1099-C, which is now binding and
10 | cannot be amended by any party due to operation of law. See Exhibit C. Thus at this time the
11 | cancellation of debt is in full force and effect rendering the Deed of Trust worthless as it holds
12 | no beneficial interest at law.

13 |    46.    Defendant PNC NATIONAL sold its interest in the second mortgage debt to
14 | Defendant US MORTGAGE in 2012. This assignment was recorded on November 17, 2014.
15 | See Exhibit D.

16 |    47.    Defendant US MORTGAGE sold its beneficial interest under the Deed of Trust
17 | to Defendant VIDA. Defendant VIDA took "all beneficial interest" under the Defendant PNC
18 | NATIONAL's Deed of Trust on February 27, 2014, recorded on November 17, 2014. See
19 | Exhibit E.

20 |    48.    No beneficial interest was granted to Defendant VIDA by this assignment
21 | because the debt is and was at all times after June 29, 2010, cancelled. See Exhibit C.

22 |    49.    Civil Code section 2924(a) reads, in part "the power shall not be exercised
23 | except . . . to secure the payment of bonds". In this case, the originator of the second mortgage
24 | deed of trust on the subject property cancelled the debt by way of issuing a 1099-C to Plaintiff,
25 | whose legal effect cancels the debt and released Plaintiff from the requirement to repay the debt.
26 | Upon issuance of the 1099-C, the Deed of Trust, Exhibit B, became worthless.

27 |    50.    Assigning the Deed of Trust did not resurrect the debt, nor give the new holder

28 |

COMPLAINT FOR WRONGFUL FORECLOSURE & QUIET TITLE

9

1 of the Deed of Trust the power of sale. The lack of a recorded release of lien did not effect to
2 void the cancellation of debt. Thus at no time did Defendant VIDA hold a beneficial interest
3 under which to exercise a power of sale.

4      51.    Further under Civil Code section 2924(d)(6) "No entity shall record or cause a
5 notice of default to be recorded or otherwise initiate the foreclosure process unless it is the
6 holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the
7 substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial
8 interest." Defendant VIDA did not hold a beneficial interest because The Deed of Trust was
9 worthless at the time of the foreclosure sale on February 10, 2016. Just because Defendant
10 VIDA was duped into or made the bad business decision of purchasing a Deed of Trust that
11 held no beneficial interest on the subject property does not make Plaintiff responsible to pay
12 Defendant VIDA for their mistake.

13      52.    Because there was no payment that could legally be secured from Plaintiff by
14 way of non-judicial foreclosure under Civil Code section 2924, Defendant VIDA was not
15 authorized under that statute to conduct a non-judicial foreclosure. Defendant VIDA was made
16 aware of the status of the second mortgage as cancelled by operation of law prior to it
17 conducting these non-judicial foreclosure proceedings against Plaintiff and the subject property
18 under this section.

19      53.    Civil Code section 2924(a)(6) bars all defendants from initiating foreclosure
20 unless they are the holder of the beneficial interest under the mortgage or deed of trust, the
21 original trustee or the substituted trustee under the deed of trust, or the designated agent of the
22 holder of the beneficial interest.

23      54.    When Defendant VIDA caused the Notice of Default to be recorded on the
24 subject property on September 22, 2015, it violated Civil Code section 2924.

25      55.    When Defendant VIDA caused the Notice of Sale to be recorded on the subject
26 property on January 15, 2016, it violated Civil Code section 2924.

27      56.    When Defendant VIDA caused then the Trustee's Deed Upon Sale to occur and

28

1  then be recorded upon the subject property on February 16, 2016, it violated Civil Code section
2  2924.

3        57.    As set forth above, Defendants foreclosed and sold Plaintiff's home purporting to
4  act under the subject Deed of Trust although they are not beneficiaries, and/or trustees, and/or
5  otherwise authorized to initiate foreclosure proceedings as Defendants held no beneficial
6  interest under the Deed of Trust. Defendants were acting outside of the scope of their allowable
7  authority under this section and thus not authorized to initiate foreclosure proceedings under
8  law.

9        58.    As a result, Plaintiff has sustained damage to credit, emotional distress, and has
10  incurred attorney fees and costs in bringing this suit. Plaintiff requests relief from violations of
11  Civil Code section 2924 and requests the Court vacate and set aside the sale of real estate under
12  this section. Further, Plaintiff has sustained damages, including, but not limited to, excessive
13  interest accumulation, negative amortization, loss of equity, destruction of credit standing, loss
14  of her home, and late fees and other charges, in an amount to be shown at trial. As a result of the
15  intentional, reckless, and willful misconduct by defendants, Plaintiff also seeks the greater of
16  treble actual damages or statutory damages of fifty thousand dollars ($50,000).

17                           **SECOND CAUSE OF ACTION**

18                           Cancellation of Recorded Instruments

19                              (Against All Defendants)

20        59.    Plaintiff incorporates herein by this reference each and every allegation set forth
21  above, as though fully set forth herein.

22        60.    As set forth above, defendants never had the legal authority to foreclose, i.e., the
23  authority to exercise the power of sale as an assignee of the Note and Deed of Trust, because
24  Defendant VIDA held no beneficial interest under the assignment as they were not entitled to
25  payment of any money after the debt was cancelled by the originator. The acknowledgement
26  did not grant them the authority to exercise a power of sale under Civil Code § 2932.5, and thus
27  the non-judicial foreclosure sale is void.

28  _____

1    61.    The lack of a release of lien did not have any effect on the status of the debt as
2 cancelled.  Civil Code section 882.030.

3    62.    Moreover, the defendants never had the legal authority to foreclose because the
4 instrument (Deed of Trust), which permitted foreclosure if the borrower was in default, is void
5 as it was improperly assigned and/or transferred to the defendants from the original lender. The
6 beneficial interest under the original Deed of Trust was cancelled by operation of law, rendering
7 it uncollectable, and the originator Defendant PNC NATIONAL neglected to file a release of
8 lien.

9    63.    In failing to file the release of lien, it subjected Plaintiff to exposure to harm to
10 credit, emotional distress, and having to defend her interest in the title.  Further, Defendant PND
11 NATIONAL sold the right to collect to US MORTGAGE who transferred it to VIDA. After the
12 legal cancellation of the debt, no beneficial interest remained on this instrument, because by
13 operation of law, the debt is uncollectable.  Thus this Deed of Trust could not provide a basis
14 for a foreclosure, and the non-judicial foreclosure is void.

15    64.    Accordingly, Plaintiff hereby requests an order of this Court that the Trustee's
16 Sale was irregular in that it was legally void and conducted without any right or privilege by the
17 defendants. As such, each and every document improperly recorded should be set aside.

18                   **THIRD CAUSE OF ACTION**

19            Violation of California Business and Professions Code Section 17200, et seq.

20                       (Against All Defendants)

21    65.    Plaintiff incorporates herein by this reference each and every allegation set forth
22 above, as though fully set forth herein.

23    66.    Business and Professions Code section 17200 *et seq*. prohibits unfair or
24 deceptive business practices.  As alleged herein above, Plaintiff has standing to pursue this
25 claim as she has suffered injury in fact and has lost money or property as a result of the named
26 defendants' actions as set forth herein.

27    67.    Defendant PNC NATIONAL cancelled the second mortgage on the subject

28

1 property voluntarily. Defendant PNC NATIONAL received a benefit under a governmental
2 program for voluntarily cancelling this debt and failed to record a release of lien on the
3 property. After receiving this benefit under a governmental program, Defendant PNC
4 NATIONAL then turned around and received an additional benefit by selling an assignment to
5 this Deed of Trust to a third party, Defendant US MORTGAGE.

6      68.    Defendant PNC NATIONAL did this knowing that they had cancelled the debt
7 and that it was uncollectable by operation of law. When they sold this assignment to other
8 defendants, they exposed Plaintiff to harm by third parties who have now wrongfully interfered
9 with her legal right to hold title, exposed her to emotional distress, pain and suffering, and have
10 harmed her credit, and are now threatening her right to possession of the subject property.

11      69.    Defendant VIDA purchased this worthless debt from other defendants and after
12 being informed that it held no beneficial interest in the property by operation of the law of
13 cancelled debt, which rendered it uncollectable, they foreclosed on the property in violation of
14 California law, without authority.

15      70.    As a result of the defendants' unfair business practices in failing to adhere to the
16 statutory requirements regarding fairly treating cancelled and uncollectable debt, Plaintiff has
17 sustained damages, including, but not limited to, excessive interest accumulation, negative
18 amortization, loss of equity, destruction of credit standing, pain, suffering, and emotional
19 distress, threat of loss of possession in an amount to be shown at trial.

20                             **FOURTH CAUSE OF ACTION**
21                                  Negligence
22                           (Against All Defendants)

23      71.    Plaintiff incorporates herein by this reference each and every allegation set forth
24 above, as though fully set forth herein.

25      72.    Defendants owed Plaintiff a general duty of care. Further, defendants owed
26 Plaintiff a statutory duty of care. California Civil Code section 2924 and other statutes
27 referenced herein, mandate a duty upon the defendants to ensure that appropriate safeguards are

28

1  put into place prior to any foreclosure sale. These sections were designed specifically to protect
2  homeowners, such as Plaintiff, by preventing the non-judicial foreclosure of property to entities
3  that hold no beneficial interest.

4      73.    As a result of the illegal recordings Plaintiff has suffered severe stress that has
5  impacted her physical health and has been subjected to multiple trespassers on her property,
6  constant harassment and visitation by those while the property was listed for foreclosure sale
7  and is being threatened with the process of an illegal and improper Unlawful Detainer
8  proceeding.

9      74.    Defendants were fraudulently selling a worthless Deed of Trust, because the
10  cancelled debt was uncollectable at law and/or, operating under color of that worthless Deed of
11  Trust to conduct an illegal non-judicial foreclosure sale, or neglecting to record a release of lien
12  from the second mortgage's Deed of Trust, and acting to expose Plaintiff to illegal collection
13  activities by way of selling an uncollectable debt after the debt was discharged by operation of
14  law.

15      70.    As a result of the defendants' unfair business practices in failing to adhere to the
16  statutory requirements regarding fairly treating cancelled and uncollectable debt, Plaintiff has
17  sustained damages, including, but not limited to, excessive interest accumulation, negative
18  amortization, loss of equity, destruction of credit standing, pain, suffering, and emotional
19  distress, threat of loss of possession in an amount to be shown at trial

20                          **FIFTH CAUSE OF ACTION**
21                             Declaratory Relief
22                           (Against All Defendants)

23      75.    Plaintiff incorporates herein by this reference each and every allegation set forth
24  above, as though fully set forth herein.

25      76.    An actual controversy exists. Civil Code section 2924(a)(6) bars all defendants
26  from initiating foreclosure unless they are the holder of the beneficial interest under the
27  mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust,

28

1 | or the designated agent of the holder of the beneficial interest.

2 |     77.   · As set forth above, Defendant VIDA has foreclosed under the worthless Deed of

3 | Trust although it is not a beneficiary, trustee, or otherwise authorized to initiate foreclosure

4 | proceedings.

5 |     78.    Plaintiff has since been served with a prematurely initiated three-day notice to

6 | quit, by and through counsel for Defendant VIDA, which is a first step in initiating an Unlawful

7 | Detainer action. Defendant VIDA did not follow California law and wrongfully utilized non-

8 | judicial foreclosure as they are not a holder of a beneficial interest in the subject property and

9 | thus, did not have the authority to foreclose under Civil Code section 2924. Defendant VIDA

10 | lacks the authority to succeed on an Unlawful Detainer action because it does not properly hold

11 | title under law and has initiated these proceedings prematurely in violation of Code Civil

12 | Procedure 2924.8.

13 |     79.    A judicial determination concerning the relative rights, responsibilities,

14 | obligations and interest as to each of the parties hereto with respect to the subject real estate is

15 | needed. Plaintiff hereby requests a judicial determination concerning the relative rights,

16 | responsibilities, obligations and interest as to each of the parties hereto. Plaintiff further

17 | requests that Defendant PNC NATIONAL be directed to record a release of lien on the property

18 | because it cancelled its beneficial interest under its Deed of Trust by operation of law when it

19 | issued the 1099-C to Plaintiff, rendering the debt uncollectable as no beneficial interest remains

20 | in that Deed of Trust.

21 | **DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES**

22 |     Plaintiff GENET HABTEMARIAM hereby demands a trial by jury.

23 |     WHEREFORE Plaintiff GENET HABTEMARIAM prays for Judgment and

24 | Order against the defendants, as follows:

25 | 1.  That Judgment is entered for Plaintiff and against defendants, and each of them;

26 | 2.  For an Order requiring defendants to show cause, if they have any, why they should not

27 |     be enjoined as set forth below, during the pendency of the action;

28 |

1    3. For compensatory damages, according to proof at trial;

2    4. For consequential damages, according to proof at trial;

3    5. For treble, general, and statutory damages for all injuries resulting from the causes of

4    action set forth herein according to proof at trial;

5    6. For disgorgement and restitution of all earnings, profits, compensation and benefits

6    received by defendants as a result of their unlawful acts and practices;

7    7. For punitive and/or exemplary damages in an amount sufficient to punish defendants'

8    wrongful conduct and deter future misconduct;

9    8. For an accounting from defendants of all monies received by them on Plaintiff's subject

10    mortgage loan;

11    9. Prejudgment interest;

12    10. Costs and disbursements of the action;

13    11. Attorney's fees;

14    12. For declaratory relief concerning the relative rights, responsibilities, obligations and

15    interest as to each of the parties hereto with respective to the subject real estate; and;

16    13. For cancellation of the improperly recorded instruments;

17    14. For recording a release of the second mortgage lien;

18    15. For such other and further relief as the Court may deem just and proper.

19  DATED: April 18, 2016                 Respectfully submitted,

20                                LAW OFFICES OF TED A. GREENE, INC.

21

22                            By:

23                                Erin Stratte, Esq.

                                  Attorney for Plaintiffs

24

25

26

27

28

# EXHIBIT A

## ALLIANCE TITLE COMPANY
### -280-

Return to:
GATEWAY BANK, FSB
2306 MERCED STREET
SAN LEANDRO, CA 94577



Sacramento County Recording
Craig A Kramer, Clerk/Recorder
BOOK **20070404** PAGE **1103**

Check Number 4218
Wednesday, APR 04, 2007  1:23:25 PM
Ttl Pd    $72.00           Nbr-0004828431

TJH/12/1-22

--- --- -- - - - - - - - --- -- -- - - - - - -

——————————————— [Space Above This Line For Recording Data] ———————————————

Loan No:   80-838139                                              Data ID:  157
Borrower:   GENET HABTEMARIAM

### DEED OF TRUST        MIN: 100134001100183149

#### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated March 27, 2007, together with all Riders to this document.

(B) **"Borrower"** is GENET HABTEMARIAM , AN UNMARRIED WOMAN      . Borrower is the trustor under this Security Instrument.

(C) **"Lender"** is GATEWAY BANK, FSB. Lender is A FEDERAL SAVINGS BANK organized and existing under the laws of the State of CALIFORNIA. Lender's address is 2306 MERCED STREET SAN LEANDRO, CA 94577.

(D) **"Trustee"** is GATEWAY BANK, FSB.

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005   1/01        (Page 1 of 16 Pages)

Loan No: 80-838139 Data ID: 157

(F) "Note" means the promissory note signed by Borrower and dated March 27, 2007. The Note states that Borrower owes Lender THREE HUNDRED FORTY-EIGHT THOUSAND and NO/100-----Dollars (U.S. $ 348,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2037.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider
☐ 1-4 Family Rider  ☐ Biweekly Payment Rider
☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005 1/01 (Page 2 of 16 Pages)

Loan No: 80-838139

Data ID: 157

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of SACRAMENTO:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of 7 SHIPMAN COURT,
[Street]

SACRAMENTO, CALIFORNIA
[City]

95823          ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005   1/01          (Page 3 of 16 Pages)

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

**Form 3005  1/01**      *(Page 4 of 16 Pages)*

Loan No: 80-838139                                                            Data ID: 157

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005   1/01        *(Page 5 of 16 Pages)*

Loan No: 80-838139                                                    Data ID: 157

   4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

   Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

   Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

   5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

   If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

                                   Form 3005   1/01        *(Page 6 of 16 Pages)*

Loan No: 80-838139                                                    Data ID: 157

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                        Form 3005   1/01        (Page 7 of 16 Pages)

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Loan No: 80-838139                                                               Data ID: 157

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005   1/01        (Page 9 of 16 Pages)

Loan No: 80-838139

Data ID: 157

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005    1/01          (Page 10 of 16 Pages)

Loan No: 80-838139                                           Data ID: 157

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                    **Form 3005   1/01**          *(Page 11 of 16 Pages)*

Loan No: 80-838139                                                        Data ID: 157

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                        Form 3005   1/01        (Page 12 of 16 Pages)

Loan No: 80-838139                                                    Data ID: 157

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005    1/01          (Page 13 of 16 Pages)

Loan No: 80-838139                                                          Data ID: 157

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005   1/01          (Page 14 of 18 Pages)

Loan No: 80-838139                                                              Data ID: 157

   If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

   Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

   23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

   24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

   25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Loan No: 80-838139

Data ID: 157

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Tranet Halbte m ariin (Seal)
GENET HABTEMARIAM —Borrower

——————————— [Space Below This Line For Acknowledgment] ———————————

State of CALIFORNIA §
County of SANTA CLARA §

On March 27 , 20 07, before me, Melinda R. Woods , a Notary Public,
personally appeared
GENET HABTEMARIAM
☐ personally known to me
OR
☒, proved to me on the basis of satisfactory evidence

to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Melinda Bia
Notary Public
Melinda R. Woods
(Printed Name)

[Seal]

My commission expires: 6/10/07

MELINDA R. WOODS
Commission # 1423587
Notary Public - California
Santa Clara County
My Comm. Expires Jun 10, 2007

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01        (Page 16 of 16 Pages)

Page No. 6
File No. 12476985-098-

## EXHIBIT "A"
## LEGAL DESCRIPTION

All that certain real property in the City of Sacramento, County of Sacramento, State of California, described as follows:

Lot 49, as shown on the Plat of Laguna Parkway, filed in the Office of the County Recorder of Sacramento County in Book 200 of Maps, Map No. 1.

APN No: 117-0970-065-0000

Loan No: 80-838139                                                                Data ID: 157
Borrower: GENET HABTEMARIAM

## ADJUSTABLE RATE RIDER
### Five Year Fixed - One Month Payment Option

THIS ADJUSTABLE RATE RIDER is made this 27th day of March, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to GATEWAY BANK, FSB ("Lender") of the same date and covering the property described in the Security Instrument and located at:

7 SHIPMAN COURT
SACRAMENTO, CALIFORNIA 95823
[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Lender or anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for changes in the interest rate and the monthly payments, as follows:

## 2. INTEREST
(A) Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will initially pay interest at a yearly rate of 7.750 %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

PAYMENT OPTION 5 YEAR FIXED RATE-ONE MONTH MULTISTATE ADJUSTABLE RATE RIDER 10/06
(Page 1 of 5 Pages)

Loan No: 80-838139                                                    Data ID: 157

(B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of May, 2012, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. Although the interest rate may change monthly, my monthly payment will be recalculated in accordance with Section 3.

(C) Interest Rate Limit

My interest rate will never be greater than 9.9500 %.

(D) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO and ONE/FOURTH percentage points (2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

3. PAYMENTS

(A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on June 1, 2007. Each of these dates is called a "Payment Due Date." I will make these payments every month until I have paid all the Principal and interest and any other charges that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1, 2037, I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 919 CLEMENT STREET, SAN FRANCISCO, CALIFORNIA 94111, or at a different place if required by the Note Holder.

(B) Minimum Payment; Amount of My Initial Monthly Payments

My "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with this Section 3(B), or Section 3(D), 3(F) or 3(G), below, as applicable.

Each of my initial Minimum Payments will be in the amount of U.S. $ 1,286.28, until a new Minimum Payment is required as provided below. If my Minimum Payment is not sufficient to cover the interest due under the Note, the difference will be added to my Principal amount as provided in Section 3(E) below. My initial Minimum Payment may not be sufficient to cover the interest due.

(C) Payment Change Dates

My Minimum Payment may change as required by Section 3(D) below beginning on the first day of June, 2012, and on that day every 12th month thereafter through my 109th Payment Due Date. Beginning with my 121st Payment Due Date, my Minimum Payment may change monthly thereafter. Each of these dates is called a "Payment Change Date." My Minimum Payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay at least the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

PAYMENT OPTION 5 YEAR FIXED RATE-ONE MONTH MULTISTATE ADJUSTABLE RATE RIDER 10/06

Loan No: 80-838139                                                    Data ID: 157

**(D)  Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." For the Payment Change Dates occurring on the 61st, 73rd, 85th, 97th, and 109th Payment Due Dates, the Note Holder also will multiply the amount of my last Minimum Payment due before the Payment Change Date by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) below requires me to pay a different amount, the amount of my new Minimum Payment that will be effective on each of the 61st, 73rd, 85th, 97th, and 109th Payment Change Dates will be the lesser of the Full Payment or the Limited Payment. The amount of my new Minimum Payment that will be effective on each of the Payment Change Dates beginning with the 121st Payment Due Date and continuing monthly thereafter will be the Full Payment, as provided in Section 3(G) below.

The Minimum Payment applies only to the Principal and interest payment and does not apply to any escrow payments the Note Holder may require under the Security Instrument.

**(E)  Additions to My Unpaid Principal**

My monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above. For each month that my monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal may never exceed a maximum amount equal to 115% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid Principal under Section 3(E) above could cause my unpaid Principal to exceed that maximum amount. In that event and unless Section 3(G) requires me to pay a different amount, on the Payment Due Date that my paying my monthly payment would cause me to exceed that limit and continuing each monthly Payment Due Date thereafter through the 120th Payment Due Date, I will instead pay a new monthly payment in an amount not less than the amount that would pay the interest portion of the monthly payment at the interest rate effective during the month preceding the applicable Payment Due Date. This amount will be my new Minimum Payment. This means that my Minimum Payment may change monthly. This method of calculating my new Minimum Payment amount will remain in effect until the 121st Payment Due Date.

**(G)  Required Full Payment**

Beginning on the Payment Change Date that occurs on the 121st Payment Due Date and continuing monthly thereafter, I will pay the Full Payment as my Minimum Payment until my monthly payment changes again.

**(H)  Payment Options**

Each month the Note Holder may provide me with up to three additional payment options (in addition to the Minimum Payment) that are equal to or greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

    (i)  Interest Only Payment: the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option. This payment option will not be available beginning with the 121st Payment Due Date.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month. This Payment Option is calculated on the assumption that the current interest rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change in accordance with Section 2(B) above.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) within a fifteen (15) year period from the first payment due date in substantially equal installments at the interest rate effective during the preceding month. This Payment Option is calculated on the assumption that the current rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change in accordance with Section 2(B) above.

<u>Payment Options will only be available if they are equal to or greater than the Minimum Payment.</u>

(I) **Failure to Make Adjustments**

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described herein, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me that may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies that I may have paid to partial Prepayment of unpaid Principal.

**4. NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Loan No: 80-838139                                                      Data ID: 157

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)
GENET HABTEMARIAM —Borrower

**PAYMENT OPTION 5 YEAR FIXED RATE-ONE MONTH MULTISTATE ADJUSTABLE RATE RIDER 10/06**
*(Page 5 of 5 Pages)*

EXHIBIT B

**ALLIANCE TITLE COMPANY**

**-280-**

Recording Requested By:

**EDNA LORA**
Return To:

**National City Bank**
**P.O. Box 8800**
**Dayton, OH 45401-8800**

Prepared By:

Sacramento County Recording
Craig A Kramer, Clerk/Recorder
BOOK **20070417** PAGE **0448**
Check Number  4288
Tuesday, APR 17, 2007  9:05:01 AM
Itl Pd    $33.00       Nbr-0004847326

AMH/68/1-9

0005497500

---

# DEED OF TRUST (AND REQUEST FOR NOTICE OF DEFAULT)

THIS DEED OF TRUST is made this    10    day of   April    2007  , among the Trustor,
**GENET HABTEMARIAM An Unmarried Woman**

, whose address is

**7 SHIPMAN COURT SACRAMENTO, California 95823**

(herein "Borrower"),

**NATIONAL CITY BANK**

(herein "Trustee"), and the Beneficiary,

**National City Mortgage a division of**
**National City Bank**
**a**    **National Banking Association**
   **United States**
   **3232 NEWMARK DRIVE, MIAMISBURG, OH  45342**

organized and existing under the laws of
, whose address is
. (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys
to Trustee, in trust, with power of sale, the following described property located in the County of   **Sacramento**
, State of California:

**SEE EXHIBIT "A" ATTACHED**

Parcel ID Number:
which has the address of    **7 SHIPMAN COURT**    [Street]
   **SACRAMENTO**      [City], California   **95823**    [ZIP Code] (herein "Property Address");

| **CALIFORNIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC  UNIFORM  INSTRUMENT** |
| --- |

**NATL078(CA)** (0810)     Form 3805
          Amended 9/99
Page 1 of 7     Initials:
   VMP Mortgage Solutions, Inc.

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property";

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated   April 10,
2007                                                   and extensions and renewals thereof (herein "Note"), in the principal sum of
U.S. $       43,500.00         , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on       May 1, 2022                         ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender

and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has a priority over this Deed of Trust.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing Law; Severability. The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall

Initials:

not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

Initials: _____

Form 3805

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. Reconveyance. Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. Substitute Trustee. Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

22. Request for Notices. Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

23. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded                                    , in Book
              , Page                                    , records of
                                              County,   or   filed   for   record   with   recorder's   serial   number
                                              County,   California,   executed   by

GENET HABTEMARIAM An Unmarried Woman


as trustor (or mortgagor) in which National City Mortgage a division of
National City Bank
is named as beneficiary (or mortgagee) and

                                                                                                          as trustee

be mailed to          NATIONAL CITY BANK
at

Initials [initials]          Form 3805

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

_____
Lender Representative

State of California
County of
On _____ , before me _____

_____, personally appeared

_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_Genet Habtemariam_ (Seal)
GENET HABTEMARIAN          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

[Sign Original Only]

NATL976(CA) (0510)          Page 6 of 7          Form 3805

State of California
County of Santa Clara

} ss.

On April 10, 2007

before me, Melinda R. Woods Notary Public

personally appeared

Genet Habtemariam

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

(This area for official notarial seal)

Melinda R Woods

(Seal)

MELINDA R. WOODS
Commission # 1423587
Notary Public - California
Santa Clara County
My Comm. Expires Jun 10, 2007

MELINDA R. WOODS
Commission # 1423587
Notary Public - California
Santa Clara County
My Comm. Expires Jun 10, 2007

Order No. 12511928-098-

## SCHEDULE C

### LEGAL DESCRIPTION

All that certain real property in the City of Sacramento, County of Sacramento, State of California, described as follows:

Lot 49, as shown on the Plat of Laguna Parkway, filed in the Office of the County Recorder of Sacramento County in Book 200 of Maps, Map No. 1.

**BALLOON RIDER TO MORTGAGE, DEED OF TRUST OR SECURITY DEED**

0005497500

Date **April 10 , 2007**

1. **BORROWER(S)**    **GENET HABTEMARIAM**

Property Address **7 SHIPMAN COURT**
                  **SACRAMENTO California 95823**

2. **DEFINED TERMS; RIDER A PART OF THE SECURITY INSTRUMENT.** "Rider " means this Balloon Rider to Mortgage, Deed of Trust or Security Deed which is attached to, made a part of and amends and supplements the Mortgage, Deed of Trust or Security Deed ("Security Instrument") which Borrower(s) gave to **National City Mortgage**___, a division of National City Bank ("the Lender") and which is dated the same date as this Rider. The Security Instrument secures the Fixed Rate Note and Security Agreement ("Note") and covers the property described therein located at the address set forth above. The term "the Lender" includes Lender's successors and assigns. In the event there are any conflicts between this Rider and the Security Instrument the provisions of the Rider will control.

3. **BALLOON NOTE.** The final payment due on the Maturity Date of the Note is larger than the previous monthly payments. The final payment includes a substantial payment of principal. The Note is commonly called a "balloon note."

4. **BALLOON NOTE AGREEMENT.** Borrower(s) understand and agree as follows:

THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH IN THE NOTE AND SECURITY INSTRUMENT. THE BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, UNPAID INTEREST AND OTHER SUMS THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. THE BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT THE BORROWER MAY OWN, OR THE BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER THE BORROWER HAS THIS LOAN WITH, WILLING TO LEND THE BORROWER THE MONEY. IF THE BORROWER REFINANCES THIS LOAN AT MATURITY, THE BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF THE BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

5. **SIGNATURES. BORROWER HAS READ AND AGREES TO ALL PROVISIONS OF THIS RIDER.**

| | |
|---|---|
| **GENET HABTEMARIAM** | _Genet Habtemariam_ |
| Type or print name : | Signature |
| | X_____ |
| Type or print name | Signature |
| | X_____ |
| Type or print name | Signature |
| | X_____ |
| Type or print name of | Signature |

©2006 National City Corporation
BALNRDR (04/06)

# EXHIBIT C

☐ CORRECTED (if checked)

| CREDITOR'S name, street address, city, state, ZIP code, and telephone no.<br><br>PNC BANK, NATIONAL ASSOCIATION<br>P.O. BOX 1820<br>DAYTON 45401-1820<br><br>CUSTOMER SERVICE: 1-800-822-5626 | | OMB No. 1545-1424<br><br>20**10**<br>Form 1099-C | Cancellation<br>of Debt |
|---|---|---|---|
| | **1** Date canceled<br>06-29-10 | **2** Amount of debt canceled<br>$   46,194.46 | **Copy B**<br>**For Debtor** |
| DEBTOR'S name, street address (including apt. no.), city, state, and ZIP code | **3** Interest if included in box 2<br>$        0.00 | | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
| 2-749-58462-0002732-001-1-000-000-000-000<br><br>GENET HABTEMARIAM<br>7 SHIPMAN CT<br>SACRAMENTO   CA 95823 | **4** Debt description<br>7 SHIPMAN CT<br>SACRAMENT CA 95823 | |
| | **5** Was borrower personally liable for repayment of the debt?<br>☒ Yes       ☐ No | |
| | **6** Bankruptcy (if checked)<br>☐ | **7** Fair market value of property<br>$   183,384.00 |
| | CREDITOR'S federal identification number<br>22-1146430 | DEBTOR'S identification number<br>***-**-0720 |
| | Account number (see instructions)<br>0005497500 | |

| Form **1099-C** | (Keep for your records) | Department of the Treasury - Internal Revenue Service |
|---|---|---|

# EXHIBIT D

Sacramento County Recorder
David Villanueva, Clerk/Recorder
BOOK 20141117 PAGE 0110
Check Number 1451
Monday NOV 17, 2014 8 32 38 AM
Ttl Pd · $24 00     Rcpt # 0006418982

LAS/17/1-1

WHEN RECORDED RETURN TO
(PREPARED BY)
US Mortgage Resolution 1
2701 Renaissance Blvd
Fourth Floor                LOAN NUMBER 5497500 FOR RECORDER'S USE
King of Prussia, PA 19406 *ASSIGNMENT OF MORTGAGE*

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
        USMR Fund 2 LLC    2701 Renaissance Blvd, 4 th Fl
                           King of Prussia, PA 19406

all beneficial interest under that certain MORTGAGE dated 04/10/2007
and in the original principal amount of $43,500 00
The mortgage is described and identified by following name(s) of the mortgagor(s),
The property's common address is 7 Shipman Court, Sacramento, CA 959823

MORTGAGOR(S)          INSTRUMENT NUMBER                BOOK & PAGE

Genet Habtemariam                                      20070417 & 0448

**SEE ATTACHED LEGAL***

And recorded on the day of 04/17/2007 in the Sacramento county, CA registrar's

together with the note therein described or referred to, the money due and to become due thereon with interest,
                                                          Division OC
FNC BANK, NATIONAL ASSOCIATION. S/B/M National City Mortgage, a Subsidary of National City Bank
3232 NEWMARK DRIVE
MIAMISBURG, OH 45342

BY    Debra L. Conley                    witness- BELENDA LUKE
DEBRA L CONLEY
TITLE MORTGAGE OFFICER

                                         JOSEPH WILLIAMS
STATE OF    OHIO          )              Witness- JOSEPH WILLIAMS
COUNTY OF   MONTGOMERY )

    I, Notary Public of the County and State aforesaid, certified that DEBRA L CONLEY, MORTGAGE
OFFICER and authorized signor, personally appeared before me this day and acknowledged the execution of the
foregoing instrument

Witness my hand and stamp,
this 20th day of March, 2012

                                         BILLIE J CATLIN
                                         Notary Public State of Ohio MONTGOMERY County
                                         MY COMMISSION EXPIRES 04/03/2013

# EXHIBIT E



Sacramento County Recorder
David Villanueva, Clerk/Recorder
BOOK **20141117** PAGE **0111**

Check Number   1461
Monday   NOV 17   2014   8 32 36 AM
Tt1 Pd   $24 00   Rcpt # 0068418963

`LRS/17/1-1

Prepared by
US Mortgage Resolution
2701 Renaissance Blvd, 4ᵗ Fl
King of Prussia, PA 19406

Return To
_Vida Capital Group, LLC_
_228 Hamilton Ave 3rd Floor_
_Palo Alto, CA  94301_

---

## *ASSIGNMENT OF DEED OF TRUST*

---

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to

Vida Capital Group LLC
228 Hamilton Ave, 3rd Fl,
Palo Alto, CA 94301

all beneficial interest under certain DEED OF TRUST dated 04/10/2007
and in the original principal amount of $43,500.00
The mortgage is described and identified by following name(s) of the mortgagor(s),

The property's common address is  7 SHIPMAN COURT, SACRAMENTO, CA 95823

| MORTGAGOR(S) | INSTRUMENT NUMBER | BOOK&PAGE |
|---|---|---|
| GENET HABTEMARIAM | N/A | BOOK: 20070417 PAGES: 0448 |

**SEE ATTACHED LEGAL* (EXHIBIT A)**

And recorded on the day of 04/17/2007 in the SACRAMENTO county recorder's

# EXHIBIT F

Recording Requested By:
ORANGE COAST TITLE

Recording requested by:

When recorded mail to:

Vida Capital Group
228 Hamilton Avenue, 3rd Floor
Palo Alto, CA 94301

Forward tax statements to the address given above

Sacramento County Recorder
Donna Allred, Clerk/Recorder
BOOK 20160216 PAGE 0971
Acct 1003-SIMPLIFILE
Tuesday, FEB 16, 2016 12:48:33 PM
Ttl Pd   $24.00      Nbr-0008962435
JLW/14/1-2

---

Space above this line for recorder's use only

Trustee Sale No. F15-00066    Loan No. Habtemariam    Title Order No. 1687282-05

## Trustee's Deed Upon Sale

APN 117-0970-065-0000

The undersigned grantor declares:
1)    The Grantee herein WAS the foreclosing beneficiary.
2)    The amount of the unpaid debt together with costs was: .................................. $74,787.70
3)    The amount paid by the grantee at the trustee sale was:.......................... $10,000.00
4)    The documentary transfer tax is:..................................................... None
5)    Said property is in the City of Sacramento, County of Sacramento

Assured Lender Services, Inc., as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby GRANT and CONVEY to

**Vida Capital Group LLC**

(herein called Grantee), but without covenant or warranty, expressed or implied, all right, title, and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of Sacramento, State of California, described as follows.

**ALL THAT CERTAIN REAL PROPERTY IN THE CITY OF SACRAMENTO, COUNTY OF SACRAMENTO, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:**

**LOT 49, AS SHOWN ON THE PLAT OF LAGUNA PARKWAY, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SACRAMENTO COUNTY IN BOOK 200 OF MAPS, MAP NO. 1.**

**RECITALS:**

This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust and Request for Notice of Default dated 04/10/2007 (the "Deed of Trust"), executed by GENET HABTEMARIAM, An Unmarried Woman, as Trustor, recorded on April 17, 2007 in Book 20070417 Page 0448, Official Records in the Office of the Recorder of Sacramento County, California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell Under Deed of Trust and Request for Notice of Default (the "Notice of Default") which was recorded in the office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of Trustee's Sale have been complied with.

1

Trustee Sale No. F15-00066
Loan No. Habtemariam
Title Order No. 1687282-05

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on 02/10/2016. Grantee, being the highest bidder at such sale, became the purchaser of said property for the amount bid being $10,000.00 in lawful money of the United States, or by the partial satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

DATE: 2/11/16

Assured Lender Services, Inc.

Keith A. Attlesey, CEO

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ORANGE

On _____ before me, A. Hernandez, a Notary Public in and for said county, personally appeared Keith A. Attlesey who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public in and for said County and State

A. HERNANDEZ
Commission # 2079133
Notary Public - California
Orange County
My Comm. Expires Aug 22, 2018

2

# EXHIBIT B

Case 2:16-cv-01189-MCE-AC   Document 1   Filed 05/31/16   Page 64 of 70

**Civil Cases**

Search by Name

Search by Case

Search by Filing Date

**Tentative Rulings**

Search By Case

Search By Department

**General Info**

How This Site Works

Civil Home Page on
Saccourt

Arbitrator Selection
Process

Trial Readiness
Notification

Trial Setting Process

Complex Case Calendar

## Civil Case Details

### Case Information

| | | | |
|---|---|---|---|
| Case Title | Genet Habtemariam vs. Vida Capital Group LLC | | |
| Case Number | 34-2016-00193289-CU-OR-GDS | Case Type | Other Real Property |
| Filed Date | 04/19/2016 | Case Category | Civil - Unlimited |

## Participants ⚖

| Participant Name | Role | Represented B |
|---|---|---|
| Does 1-50 | Defendant | |
| Habtemariam, Genet | Plaintiff | Ted A Greene |
| PNC Bank National Association | Defendant | |
| US Mortgage Resolution | Defendant | |
| Vida Capital Group LLC | Defendant | |

## Scheduled Hearings ⚖

| Event Date | Event Time | Event Type | Departr |
|---|---|---|---|
| 10/20/2016 | 8:30 AM | Case Management Conference - Case Management Program | 30 |

## Register of Actions ⚖

Click the Preview button to see a preview of the document. Previewed documents contain every other page, up to
pages. To purchase a full version containing all pages, check the checkbox for the document(s) you want and then
Cart link at the top of the page to review your cart / check out.

| ROA# | ROA Entry | Filed Date | Filed By | Pa |
|---|---|---|---|---|
| 8 | Proof of Service of 30-day Summons & Complaint - Substitute filed. | 04/29/2016 | Habtemariam, Genet(Plaintiff) | |
| 7 | Proof of Service of 30-day Summons & Complaint - Substitute filed. | 04/29/2016 | Habtemariam, Genet(Plaintiff) | |
| 6 | Case Management Conference - Case Management Program scheduled for 10/20/2016 at 08:30:00 AM in Department 30 at Gordon D Schaber Courthouse and the Notice of Case Management Conference and Order to Appear has been generated . | 04/20/2016 | | |
| 5 | Case assigned to Department 30 . | 04/19/2016 | | |
| 4 | Summons for 30-Day Summons was issued during case initiation on 04/20/2016 . | 04/20/2016 | | |
| 3 | Civil Case Cover Sheet filed. | 04/19/2016 | Habtemariam, Genet(Plaintiff) | |
| 2 | Summons filed. | 04/19/2016 | Habtemariam, Genet(Plaintiff) | |
| 1 | Complaint filed. | 04/19/2016 | Habtemariam, Genet(Plaintiff) | 5 |

Contact Us    Use and Privacy Policy    Download Adobe Reader

# EXHIBIT C

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Ted A Green<br>Law Offices of Ted A Greene, Inc.<br>1912 F Street, Suite 110<br>Sacramento, CA 95811<br>TELEPHONE NO.: 9164426400   FAX NO. *(Optional):* 9162669395<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiff Genet Habtemariam | *FOR COURT USE ONLY*<br>**FILED**<br>**Superior Court Of California,**<br>**Sacramento**<br>**04/29/2016**<br>**lmartinson**<br>**By_____, Deputy**<br>**Case Number:**<br>**34-2016-00193289** |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento<br>STREET ADDRESS:   720 (th St<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:   Sacrmento, CA 95814<br>BRANCH NAME:   Superior Court | |
| PLAINTIFF/PETITIONER: Genet Habtemariam<br><br>DEFENDANT/RESPONDENT: Vida Capital Group, LLC | CASE NUMBER:<br>34-2016-00193289 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☐ other *(specify documents):*

3. a. Party served *(specify name of party as shown on documents served):*
   PNC Bank

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   300 Delaware Avenue, Wilmington, DE 19801
5. I served the party *(check proper box)*
   a. ☐ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*   (2) at *(time):*
   b. ☑ by substituted service. On *(date):* 4/21/16   at *(time):* 3:44 pm   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*
      DeeBorch Wright
      (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*   from *(city):*   or ☐ a declaration of mailing is attached.
      (5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: Genet Habtemariam | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Vida Capital Group, LLC | 34-2016-00193289 |

5.  c. ☐  by mail and acknowledgment of receipt of service. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date)*:           (2) from *(city)*:

    (3) ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐  by other means *(specify means of service and authorizing code section)*:


    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐  as an individual defendant.
  b. ☐  as the person sued under the fictitious name of *(specify)*:
  c. ☐  as occupant.
  d. ☐  On behalf of *(specify)*:
    under the following Code of Civil Procedure section:

        ☐ 416.10 (corporation)         ☐ 415.95 (business organization, form unknown)
        ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
        ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
        ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
        ☐ 416.60 (public entity)         ☐ 415.46 (occupant)
                            ☐ other:

7.  Person who served papers
  a. Name: Terrence Sweeney
  b. Address: 800 King Street, Suite 102, Wilmington, DE 19801
  c. Telephone number: 302-661-4390
  d. The fee for service was: $
  e. I am:
    (1) ☑  not a registered California process server.
    (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐  a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8.  ☑  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.    File by Fax: CRC 2.305

Date: 4/21/2016

Terrence Sweeney
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)               (SIGNATURE)

DENNIS SCHOFIELD
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires October 5, 2019

     **PROOF OF SERVICE OF SUMMONS**      

| | Public Case Access | | | | Log On \| Create Account \| Forgot Password? \| Find Order \| Document Cart (0) | | | |
|---|---|---|---|---|---|---|---|---|

| Home | Civil | Criminal | Family | Probate | Small Claims | Traffic | Unlawful Detainer |
|---|---|---|---|---|---|---|---|

## Document Order
### Order

| | |
|---|---|
| Order Date | 5/17/2016 11:34:54 AM |
| Order Total | $2.00 |
| Confirmation Number | 392381 |

| Case Number | Case Title | Division | ROA Entry | Filed Date | Pages | Cost | |
|---|---|---|---|---|---|---|---|
| 2016-00193289 | Genet Habtemariam vs. Vida Capital Group LLC | Civil | Proof of Service of 30-day Summons & Complaint - Substitute filed. | 4/29/2016 3:23 PM | 2 | 2.00 | 🔍 View |
| | | | | | Total: | $2.00 | |

Contact Us   Use and Privacy Policy   Download Adobe Reader

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
                      )  ss.
COUNTY OF SACRAMENTO )

I, Beverley Tomlin-Hill, declare:

I am employed in the County of Sacramento, State of California. I am over the age of 18 and not a party to the within action. My business address is 980 9th Street, Suite 2350, Sacramento, California 95814.

On May 31, 2016, I served the document(s) described as

- **NOTICE OF REMOVAL** on all interested parties in said action by placing a true copy thereof in a sealed envelope addressed as stated on the ATTACHED SERVICE LIST.

☒ **BY MAIL: as follows:**

☒ **STATE** - I am "readily familiar" with Wolfe & Wyman LLP's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Sacramento, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐ **BY EXPRESS MAIL** as follows: I caused such envelope to be deposited in the U.S. Mail at Sacramento, California. The envelope was mailed with Express Mail postage thereon fully prepaid.

☐ **BY PERSONAL SERVICE** as follows: I caused a copy of such document(s) to be delivered by hand to the offices of the addressee between the hours of 9:00 A.M. and 5:00 P.M.

☐ **BY ELECTRONIC ACCESS** Pursuant to the Federal Electronic Filing Court Order, I hereby certify that the above document(s) was/were uploaded to the Vincent, et al. v. PNC Mortgage, Inc. website Case No. 2:14-cv-00833-KJM-CMK and will be posted on the website by the close of the next business day and the webmaster will give e-mail notification to all parties.

☐ **FEDERAL** as follows: I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

Executed on May 31, 2016, at Sacramento, California.

Beverley P. Tomlin-Hill

1

2

3

**SERVICE LIST**
**HABTEMARIAM v. VIDA CAPITAL GROUP/PNC BANK, NA., et al.**
**W&W File No. 1641-038**
**[Revised: 05/31/2016]**

4

Erin Stratte

5
Ted A. Greene
LAW OFFICES OF TED GREENE
6
1912 F Street, Suite 110
Sacramento, CA 95811

Attorneys for Plaintiff

Tel: (916) 442-6400
Fax: (916) 266-9285
Email:  estratte@tedgreenelaw.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

2441027.1