UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENET HABTEMARIAM,<br><br>Plaintiff,<br><br>v.<br><br>VIDA CAPITAL GROUP, LLC; US MORTGAGE RESOLUTION; PNC BANK; NATIONAL ASSOCIATION; and DOES 1 to 50, inclusive,<br><br>Defendants. | No. 2:16-cv-01189-MCE-GGH<br><br>**MEMORANDUM AND ORDER** |

In bringing this lawsuit, Plaintiff Genet Habtemariam alleges that she was wrongfully subjected to foreclosure proceedings on a Second Deed of Trust that had been cancelled by the owner of the note, Defendant PNC Bank, N.A., some five years previously. Despite that cancellation, Plaintiff alleges the note was sold and ultimately assigned by PNC to Defendant Vida Capital Group who proceeded with the foreclosure. Plaintiff seeks to clear title to her property and further alleges various improprieties against both Defendants. PNC previously moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's second through fifth causes of action for failure to state a claim, ECF No. 5, which the Court denied, ECF No. 24. In her opposition to that motion, Plaintiff moved for leave to amend her complaint to add a claim for breach of contract.

ECF No. 8. That motion was granted ECF No. 24, and Plaintiff filed a First Amended Complaint ("FAC"), ECF No. 26, on March 3, 2017. PNC now moves to dismiss the newly added claim for breach of contract for failure to state a claim. ECF No. 36. As set forth below, that motion is GRANTED.[1]

## BACKGROUND[2]

In 2001, Plaintiff obtained a purchase money loan to buy a house located at 7 Shipman Court in Sacramento, California ("the subject property"). Then, in April of 2007, she refinanced her initial loan through Gateway Bank FSB and took out a second mortgage from National City Bank, an entity which later merged into PNC. Plaintiff's second mortgage was secured by a Second Deed of Trust ("SDOT") recorded on April 17, 2007.

Some three years later, PNC notified Plaintiff by mail that its SDOT was discharged, apparently due to settlement agreements PNC had reached with various agencies of the United States government. PNC effectuated that cancellation by sending a 1099-C form approved by the Internal Revenue Service for cancelling a debt. Plaintiff received the Form 1099-C on or about June 29, 2010. According to Plaintiff, because the Form 1099-C cancelled the amount she owed on the second mortgage, she believed it legally released her from any further obligation to pay the debt. Plaintiff accordingly reported the debt cancellation as income to the Internal Revenue Service for the 2010 calendar year.

Unbeknownst to Plaintiff, PNC never recorded a release of lien as to its SDOT and in fact assigned its purported interest in the loan to Defendant US Mortgage Resolution ("UMR") in approximately March of 2012. UMR, who made no attempt to

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. L. R. 230(g).

[2] The following recitation of facts is taken, sometimes verbatim, from the allegations contained in Plaintiff's FAC.

2

foreclose on the loan, then sold the SDOT to Vida sometime in 2014. When Vida contacted Plaintiff in early 2015 in an attempt to collect on the instrument, Plaintiff responded by providing Vida with a copy of the Form 1099-C and asserting that the debt had been cancelled and was not collectable. Vida nonetheless recorded a Notice of Default on the subject property on September 22, 2015, and directed the trustee to transfer title to Vida itself through non-judicial foreclosure proceedings which culminated in title transfer to Vida by a deed recorded on February 16, 2016.

Plaintiff responded by commencing this action in state court on April 19, 2016. PNC removed Plaintiff's lawsuit to this Court the same day, citing diversity of citizenship. On May 11, 2016, Vida filed an unlawful detainer action against Plaintiff, and Plaintiff was given a three-day notice to quit the premises. Rather than comply with that notice, Plaintiff removed that second case to this Court and moved to consolidate it with the suit she had commenced. The Court granted the motion. PNC subsequently moved to dismiss four of Plaintiff's five claims, and Vida joined in that motion. After the Court denied the motion to dismiss and granted leave for Plaintiff to amend her complaint, she added a breach of contract claim in connection with the settlement agreements PNC reached with various agencies of the United States government, which allegedly led PNC to discharge the SDOT.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

| | |
|---|---|
| 1 | 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require |
| 2 | detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of |
| 3 | his entitlement to relief requires more than labels and conclusions, and a formulaic |
| 4 | recitation of the elements of a cause of action will not do." Id. (citation omitted). A court |
| 5 | is not required to accept as true a "legal conclusion couched as a factual allegation." |
| 6 | Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). |
| 7 | "Factual allegations must be enough to raise a right to relief above the speculative level." |
| 8 | Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal |
| 9 | Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain |
| 10 | something more than "a statement of facts that merely creates a suspicion [of] a legally |
| 11 | cognizable right of action")). |
| 12 | Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket |
| 13 | assertion, of entitlement to relief." Id. at 555 n.3 (citation omitted). Thus, "[w]ithout some |
| 14 | factual allegation in the complaint, it is hard to see how a claimant could satisfy the |
| 15 | requirements of providing not only 'fair notice' of the nature of the claim, but also |
| 16 | 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94–95). A |
| 17 | pleading must contain "only enough facts to state a claim to relief that is plausible on its |
| 18 | face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from |
| 19 | conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well- |
| 20 | pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those |
| 21 | facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting |
| 22 | Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). |
| 23 | A court granting a motion to dismiss a complaint must then decide whether to |
| 24 | grant leave to amend. Leave to amend should be "freely given" where there is no |
| 25 | "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice |
| 26 | to the opposing party by virtue of allowance of the amendment, [or] futility of the |
| 27 | amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. |
| 28 | Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to |

be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

As an initial matter, PNC contends that "when a plaintiff asserts a cause of action for breach of a written contract, she must attach a copy of the contract to the complaint or set forth the allegedly breached terms verbatim." Id. at 5. In support of this claim, PNC cites only California law. See, e.g., Otworth v. S. Pac. Transp. Co., 166 Cal. App. 3d 452, 459 (1985) ("If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference."). However, in this Court, pleadings are governed by Federal Rule of Civil Procedure 8. "Federal law does not require [a p]laintiff to recite the contract terms verbatim or to attach a copy of the contract to the complaint." Securimetrics, Inc. v. Hartford Cas. Ins. Co., No. C 0500917CW, 2005 WL 1712008, at *2 (N.D. Cal. July 21, 2005). Instead, a plaintiff may plead a contract's "legal effect." Id.[3] "To plead a contract's legal effect, a plaintiff must 'allege

---

[3] The Court notes that the conclusion in Securimetrics relied on Rule 84 and the Federal Rules of Civil Procedure's appendix of forms, which were abrogated in the Rules' 2015 Amendment. Lyda v. CBS Corp., 838 F.3d 1331, 1337 n.2 (Fed. Cir. 2016). However, that abrogation "d[id] not alter existing pleading standards or otherwise change the requirements of Civil Rule 8." Fed R. Civ. P. 84 advisory committee's note to 2015 amendment. Thus, the Rules continue to allow plaintiffs to plead breach of contract claims by pleading the legal effect of the contract at issue.

5

the substance of its terms,' which is more difficult than pleading the contract's precise language because it 'requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions.'" Ramirez v. GMAC Mortg., No. CV 09-8189 PSG (FFMx), 2010 WL 148167, at *2 (C.D. Cal. Jan. 12, 2010) (quoting Parrish v. NFL Players Ass'n, 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007)).

Regardless of the method a plaintiff takes in pleading a breach of contract claim, he or she must allege "(1) the existence of a contract; (2) the party's performance under that contract or an excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages." Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1035 (C.D. Cal. 2015). Plaintiff's breach of contract claim alleges that PNC "[i]ssued the 1099-C to Plaintiff as a result of two separate settlement agreements it entered into with federal government agencies." FAC, ¶ 56. Plaintiff alleges that she was a third-party beneficiary to these two settlement agreements, and that PNC violated those settlements by selling the SDOT to Vida. Id. ¶ 57. PNC contends, however, that Plaintiff's breach of contract claim is inadequately pleaded because it "fails to allege the existence of a contract or its specific terms . . . sufficiently to identify the alleged contract, its terms or any alleged breach of such a contract." Mot. to Dismiss, at 4. Furthermore, PNC argues that the FAC only "vaguely refers to the two separate purported contracts in a very confusing way" such that it is unclear what the relevant terms are of each contract and how PNC allegedly breached them both. Id.

Plaintiff's breach of contract claim is deficient under Rule 8, failing to give PNC sufficient notice of the claims against it. The FAC alleges that PNC entered into "two distinct settlement agreements" with "the U.S. Justice Department and the Consumer Financial Protection Bureau, and the Federal Reserve and the Office of the Comptroller of the Currency," FAC, ¶¶ 56–57, but then fails to distinguish which allegations apply to each agreement. For example, the FAC fails to specify which agencies were parties to which agreement. Were all four government agencies party to both, or did different agencies enter into the different agreements?

6

Though PNC has been able to identify a settlement agreement that largely matches the gist of Plaintiff's breach of contract claims, see Req. for Judicial Notice, ECF No. 38, Ex. 1, it differs from the allegations in the FAC in several respects. For example, it is dated December 23, 2013, id., while the FAC describes a settlement that the parties entered into sometime in 2011 and revised in 2014, FAC ¶ 58(2). The settlement also names only the Consumer Financial Protection Bureau and the United States as parties, Req. for Judicial Notice, Ex. 1, which is inconsistent with the list of four agencies provided in the FAC. These inconsistences demonstrate the insufficiency of the allegations—does Plaintiff allege that PNC violated this settlement agreement or some other agreement?[4] Furthermore, with regard to the alleged second settlement, Plaintiff has plainly admitted that she "does not have access to the agreement and therefore such cannot be attached or referenced with specificity." Pl.'s Opp'n, ECF No. 39, at 5. Because of this lack of specificity in the FAC, the breach of contract claim fails to put PNC on notice of what is alleged against it, and PNC's motion is GRANTED.

## CONCLUSION

For the reasons provided above, PNC's Motion to Dismiss, ECF No. 36, is GRANTED. Plaintiff's breach of contract claim is dismissed without prejudice. Plaintiff may, but is not required to, file an amended complaint. If no amended complaint is filed within twenty (20) days of the date this Order is electronically filed, the cause of action dismissed by this Order shall be dismissed with prejudice without further notice to the

///

///

///

---

[4] It appears that the agreement provided by PNC is indeed one of the two settlement agreements Plaintiff contemplated. See Pl.'s Opp'n, ECF No. 39, at 5 (requesting leave to amend the complaint, "should the court require," to explicitly refer to this agreement). That PNC was able to find the agreement, however, does not remedy the faults in the FAC.

7

parties.  The Court also cautions that this will be the last opportunity to sufficiently allege the existence of a second settlement agreement.

IT IS SO ORDERED.

Dated:  July 6, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE