|   |   |
|---|---|
| GENET HABTEMARIAM, | No. 2:16-cv-01189-MCE-GGH |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| VIDA CAPITAL GROUP, LLC; US MORTGAGE RESOLUTION; PNC BANK; NATIONAL ASSOCIATION; and DOES 1 to 50, inclusive, | |
| Defendants. | |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

In bringing this lawsuit, Plaintiff Genet Habtemariam alleges that her real property at 7 Shipman Court, Sacramento, California was wrongfully subjected to foreclosure proceedings on a Second Deed of Trust that had been cancelled some five years previously by the owner of the note, Defendant PNC Bank, N.A. Despite that cancellation, Plaintiff alleges the note was sold and ultimately assigned by PNC to Defendant Vida Capital Group who proceeded with the foreclosure. Plaintiff seeks to clear title to her property and further alleges various improprieties against both Defendants. After the resolution of two motions to dismiss from PNC, Plaintiff filed a Second Amended Complaint ("SAC") on July 25, 2017. ECF No. 44. The next day, she also filed a Motion for Temporary Restraining Order in which she seeks to enjoin an

1

impending August 3, 2017 foreclosure sale by the holder of a promissory note secured by a first priority Deed of Trust by Defendant Gateway Bank, FSB ("Gateway DOT"). ECF No. 45. For the reasons provided below, that motion is GRANTED and a temporary injunction is issued pending a hearing for a preliminary injunction.

## BACKGROUND[1]

In 2001, Plaintiff obtained a purchase money loan to buy a house located at 7 Shipman Court in Sacramento, California ("the subject property"). Then, in April of 2007, she refinanced her initial loan through Gateway Bank FSB and took out a second mortgage from National City Bank, an entity which later merged into PNC. Plaintiff's second mortgage was secured by a Second Deed of Trust ("SDOT") recorded on April 17, 2007.

Some three years later, PNC notified Plaintiff by mail that its SDOT was discharged, apparently due to a settlement agreement PNC had reached with various agencies of the United States government. PNC effectuated that cancellation by sending a 1099-C form approved by the Internal Revenue Service for cancelling a debt. Plaintiff received the Form 1099-C on or about June 29, 2010. According to Plaintiff, because the Form 1099-C cancelled the amount she owed on the second mortgage, she believed it legally released her from any further obligation to pay the debt. Plaintiff accordingly reported the debt cancellation as income to the Internal Revenue Service for the 2010 calendar year.

Unbeknownst to Plaintiff, PNC never recorded a release of lien as to its SDOT and in fact assigned its purported interest in the loan to Defendant US Mortgage Resolution ("UMR") in approximately March of 2012. UMR, who made no attempt to foreclose on the loan, then sold the SDOT to Vida sometime in 2014. When Vida

---

[1] Unless otherwise noted, the following recitation of facts is taken, sometimes verbatim, from the allegations contained in Plaintiff's SAC.

contacted Plaintiff in early 2015 in an attempt to collect on the instrument, Plaintiff responded by providing Vida with a copy of the Form 1099-C and asserting that the debt had been cancelled and was not collectable. Vida nonetheless recorded a Notice of Default on the subject property on September 22, 2015, and directed the trustee to transfer title to Vida itself through non-judicial foreclosure proceedings which culminated in title transfer to Vida by a deed recorded on February 16, 2016.

Plaintiff responded by commencing this action in state court on April 19, 2016. PNC removed Plaintiff's lawsuit to this Court the same day, citing diversity of citizenship. On May 11, 2016, Vida filed an unlawful detainer action against Plaintiff, and Plaintiff was given a three-day notice to quit the premises. Rather than comply with that notice, Plaintiff removed that second case to this Court and moved to consolidate it with the suit she had commenced. The Court granted the motion.

Gateway has now posted a Notice of Trustee Sale, which sets a sale date of August 3, 2017. Pl.'s Br. in Supp. of Mot. for TRO, ECF No. 45, at 3. No payments have been made on the Gateway DOT since February 2016 when Vida conducted a trustee sale and title to the property passed to Vida. Decl. of Cathy Devlin, ECF No. 46-1, ¶ 4. Plaintiff contends that "[o]nce V[ida] foreclosed as a second lien holder, it was required to service G[ateway]'s first mortgage." Pl.'s Br. in Supp. of Mot. for TRO, at 5. Furthermore, Plaintiff states that she "did not make payments on the G[ateway] mortgage . . . as Plaintiff [is] no longer on the title to the property." Id. Plaintiff and Gateway also apparently entered into an agreement by which Gateway would "postpo[]ne filing recording, and/or publishing a Notice of Trustee's sale on the 7 Shipman Court, Sacramento, California property until at least ten days after the Court . . . issues its ruling on the Defendants' Motion to Dismiss." Decl. of Patricia H. Lyon, Ex. A, ECF No. 46-2, at 5. The Court ruled on that motion on February 14, 2017.

///

///

///

**STANDARD**

The purpose of a temporary restraining order is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction. See Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 438–39 (1974) ("[Temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."); accord Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006); Dunn v. Cate, No. CIV 08-873-NVW, 2010 WL 1558562, at *1 (E.D. Cal. Apr. 19, 2010).

Issuance of a temporary restraining order, as a form of preliminary injunctive relief, is an extraordinary remedy, and Plaintiff has the burden of proving the propriety of such a remedy. See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). In general, the showing required for a temporary restraining order and a preliminary injunction are the same. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008); accord Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009). The propriety of a TRO hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as Plaintiff demonstrates the requisite likelihood of irreparable harm and shows that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in Plaintiff's favor. All. for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011)

(concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after <u>Winter</u>).

**ANALYSIS**

Gateway argues that Plaintiff cannot demonstrate a likelihood of success on the merits because "Plaintiff has not alleged any claims against Gateway in the Complaint and has not submitted any evidence to support a claim against Gateway." Gateway's Opp'n, ECF No. 46, at 5 (emphasis removed). However, Plaintiff has raised serious questions concerning the rights and responsibilities of the parties, which supports the issuance of a temporary restraining order under the sliding scale approach. Furthermore, Plaintiff has demonstrated a likelihood of irreparable harm by alleging that she will lose her primary residence if Gateway's trustee's sale goes forward.

Plaintiff has also demonstrated that an injunction is in the public interest, and that the balance of hardships tips sharply in her favor. An injunction is in the public interest because as it is being used to ensure compliance with an alleged settlement entered into by the federal government for the benefit of the public and to ensure compliance with state foreclosure law intended to protect the public. The balance of equities tips sharply in Plaintiff's favor as the temporary restraining order merely delays Gateway's right to pursue a trustee's sale until all parties have been given an opportunity to be fully heard on the relative positions of the parties vis-à-vis the Gateway DOT. Similarly, though Vida complains that "it has been deprived of any rental income from Plaintiff," Vida's Opp'n, ECF No. 50, at 3, Vida does not explain how forestalling a foreclosure by Gateway will harm Vida.

Finally, Vida asks the Court to order Plaintiff to put up a bond for the rental value of the property. <u>See</u> <u>id.</u> at 4. However, because of uncertainties in the record, the Court declines to order a bond prior to a hearing on the matter. Though Plaintiff maintains the fair market rental value of the property is $2,000 per month, <u>see</u> Pl.'s Br. in Supp. of Mot.

for TRO, at 7, the evidence she provides in support is contested, <u>see</u> Gateway's Opp'n, at 6–7.  Furthermore, both Gateway and Vida argue that a temporary restraining order would deprive them of their right to collect rent from the property, but Vida argues that any bond be made payable to it.  <u>See</u> Vida's Opp'n, at 5.

## CONCLUSION

For the reasons provided, the Court GRANTS Plaintiff's Motion for Temporary Restraining Order.  ECF No. 45.  Pending the Court's determination regarding a preliminary injunction, Gateway is hereby enjoined from engaging in or performing, directly or indirectly, any of the following acts:  advertising, selling, transferring, conveying, foreclosing upon, evicting, or any other conduct adverse to Plaintiff regarding the real property located at 7 Shipman Court in Sacramento, California 95823.  No bond shall be required.

Furthermore, Plaintiff is hereby ordered to file a motion for preliminary injunction on or before **August 3, 2017**.  Defendants shall file a written response on or before **August 10, 2017**, and any reply from Plaintiff shall be filed on or before **August 15, 2017**.  A hearing on this matter will take place on **August 17, 2017, at 11:00 a.m.** in Courtroom 7.

IT IS SO ORDERED.

Dated:  July 28, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE