Brian H. Gunn (SBN 192594)
*bhgunn@wolfewyman.com*
Jonathan C. Cahill (SBN 287260)
*jccahill@wolfewyman.com*
WOLFE & WYMAN LLP
980 9th Street, Suite 1750
Sacramento, California 95814
Telephone:  (916) 912-4700
Facsimile:   (916) 329-8905

Attorneys for Defendant
PNC BANK, N.A.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENET HABTEMARIAM,<br><br>    Plaintiff,<br><br>v.<br><br>VIDA CAPITAL GROUP, LLC; US MORTGAGE RESOLUTION; PNC BANK, NATIONAL ASSOCIATION S/B/M NATIONAL CITY MORTGAGE and DOES 1 to 50, inclusive,<br><br>    Defendants. | Case No.: 2:16-cv-01189-MCE-AC<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PNC BANK, N.A'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY ADJUDICATION**<br><br>**Date:   July 9, 2020**<br>**Time:   2:00 pm**<br>**Ctrm:   7, 14th Floor** |

3437278.1

## <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................1

        A.      The Property and Loan.................................................................................1

        B.      The Form 1099-C and April 2010 Letter ...................................................2

        C.      Transfers of the Loan ..................................................................................3

        D.      Breach of Contract Allegations and Damages ...........................................4

III.    LEGAL STANDARD ............................................................................................5

IV.     ARGUMENT ........................................................................................................5

        A.      Plaintiff's Cancellation of Instruments Claim Fails...................................5

                1.      PNC Did Not Forgive or Discharge the Loan...................................6

                        a.      A "Charge off" Does not Forgive or Discharge a Debt ........6

                        b.      There was No Modification of the Note, Deed of Trust, or
                                Agreement between the Parties to Forgive or Cancel the Loan............7

                2.      PNC's Issuance of the 1099-C Did not Cancel or Forgive the Loan................9

                        a.      The Majority View....................................................................9

                        b.      The Minority View ...................................................................12

        B.      Plaintiff's Unfair Business Practices Claim Fails ......................................13

        C.      Plaintiff's Negligence Claim Fails..............................................................15

        D.      Plaintiff's Declaratory Relief Claim Fails .................................................16

        E.      Plaintiff's Breach of Contract and Breach of Covenant of Good Faith and Fair
                Dealing Claims Fail ...................................................................................17

V.      CONCLUSION.....................................................................................................18

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

3437278.1

# TABLE OF AUTHORITIES

Page

**Cases**

*Adickes* v. *SH Kress & Co.*,
398 U.S. 144, 157 (1970) ............................................................................... 5

*Amtrust Bank v. Fossett*,
223 Ariz. 438, 438, 224 P.3d 935, 935 (Ct. App. 2009) .............................. 12

*Anderson* v. *Liberty Lobby, Inc.*,
477 U.S. 242, 249-50 (1986) ......................................................................... 5

*Bank Leumi Le-Israel, B.M* v. *Lee*,
928 F.2d 232,  236 (7th Cir. 1991) ................................................................ 5

*Banner Entm't v. Superior Court*,
62 Cal. App. 4th 348, 357-58, 72 Cal. Rptr. 2d 598 (1998) (emphasis in original) ........................ 8

*Batt v. City and Cty of San Francisco*,
155 Cal. App. 4th 65, 82 (Cal. Ct. App. 2007) ............................................ 16

*Booth v. Hoskins*,
75 Cal. 271, 276 (1888) ................................................................................. 6

*Bustamante v. Intuit, Inc.*,
141 Cal. App. 4th 199, 208, 45 Cal. Rptr. 3d 692 (2006) ............................ 8

*C.J.L. Const. Inc. v. Universal Plumbing*
(1993)18 Cal.App.4th 376, 390 .................................................................... 16

*Capital Imaging* v. *Mohawk Valley Medical Association*,
996 F.2d 537,542 (2nd Cir. 1993), *cert. denied,* 510 U.S. 94 (1993) ........... 5

*Carlson, Collins, Gordon & Bold v. Banducci*,
257 Cal. App. 2d 212, 223, 64 Cal. Rptr. 915 (1967) (citation omitted) ....... 8

*Cavalry SPV I, LLC v. Watkins*,
36 Cal. App. 5th 1070, 1088, 249 Cal. Rptr. 3d 334, 349 (2019) ................. 7

*Celotex Corp.* v. *Catrett*,
477  U.S. 317, 323 (1986) .............................................................................. 5

*Clark v Superior Court*
(2010) 50 Cal.4th 605, 614 .......................................................................... 15

*Dills v. Delira Corp.*,
145 Cal. App.2d 124, 129 (Cal. Ct. App. 1956) ......................................... 16

*Durrell v. Sharp Healthcare*
(2010) 183 Cal.App.4th 1350, 1366 (citation omitted) ............................... 14

*Eddy v. Sharp*,
199 Cal.App.3d 858, 864 (1988) ................................................................. 15

*FDIC v. Cashion*,

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

3437278.1

## TABLE OF AUTHORITIES

Page

720. F.3d 169, 179 (4th Cir. 2014)...................................................................... 10, 11, 12

*Garamendi v. Golden Eagle Ins. Co.*
(2004) 116 Cal.App.4th 694, 722-723 ......................................................................... 13

*Grove v. Grove Valve & Regulator Co.*
(1970) 4 Cal. App. 3d 299, 311-312 [84 Cal. Rptr. 300] ........................................... 8

*Guz v. Bechtel National, Inc.,*
24 Cal .4th 317, 349-350 (2000)..................................................................................... 17

*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga,*
*175* Cal.App.4th 1306, 1344 (2009) ............................................................................... 17

*In re Tobacco II Cases*
(2009) 46 Cal.4th 298, 327-29 ....................................................................................... 14

*In re Zilka*, 407 B.R. 684, 689 (Bankr. W.D. Pa. 2009) ............................................. 10

*Jenkins v. JPMorgan Chase Bank, N.A.,*
216 Cal.App.4th 497 (2013) ...................................................................................... 14, 15

*Khan v. CitiMortgage, Inc.,*
975 F. Supp. 2d 1127, 1137 (E.D. Cal. 2013) ............................................................ 9

*Khoury v. Maly's of California, Inc.*
(1993) 14 Cal.App.4th 612, 619 ................................................................................... 14

*Krobitzsch v. Middleton,*
72 Cal. App. 2d 804, 808, 165 P.2d 729 (1946) ......................................................... 9

*Kwikset Corp. v. Superior Court,*
51 Cal. 4th 310, 320–21 (2011) .............................................................................. 14, 15

*Ladd v. County of San Mateo,*
12 Cal.4th 913, 917 (1996) .......................................................................................... 15

*Leonard v. Old Nat'l Bank Corp.,*
837 N.E.2d 543, 545-46 (Ind. Ct. App. 2005)............................................................. 10

*Ludgate Ins. Co. v. Lockheed Martin Corp.*
(2002) 82 Cal.App.4th 592, 605 .................................................................................. 16

*Mix v. Sodd,*
126 Cal.App. 3d 386, 390 (1981) ............................................................................... 6

*Nymark v. Heart Federal Savings,*
231 Cal. App. 3d 1089, 1096 (1991) ........................................................................... 16

*Philpott v. Superior Court*
(1934) 1 Cal.2d 512, 517 .............................................................................................. 15

*Reichert v. General Ins. Co. of America,*
68 Cal. 2d 822, 830, 69 Cal. Rptr. 321, 442 P.2d 377 (Cal. 1968).......................... 17

3

# TABLE OF AUTHORITIES

Page

*Smith v. Williams*,
   55 Cal.2d 617, 620 (1961) ............................................................................ 6

*State of Cal.* v. *Campbell,*
   138 F.3d 772, 780 (9th Cir. 1998) ............................................................... 5

Storek & Storek Inc. v. Citicorp Real Estate, Inc.,
   100 Cal.App.4th, 44, 55 (1992) ................................................................... 17

*T. W Elec. Servo* v. *Pacific Elec. Contractors Ass'n,*
   809 F.2d 626, 630 (9th Cir. 1987) ............................................................... 5

*Zoslow v. MCA Distrib. Corp.*,
   693 F.2d 870, 883 (9th Cir. 1982) ............................................................... 5

**Statutes**

26 C.F.R. § 1.6050P-1(a)(1)                                                       14

26 C.F.R. § 1.6050P-1(b)(2)                                                       14

26 C.F.R. § 1.6050P-1(b)(3)                                                       13

Bus. & Prof. Code § 17204                                                        17

Bus. & Prof. Code, § 17203                                                       18

Cal. Civ. Code § 1550                                                            10

Cal. Civ. Code § 1565                                                            10

Cal. Civ. Code § 1580                                                            10

Cal. Civ. Code § 1788.50(a)(2)                                                   10

Civ. Code § 2941(a)                                                              19

**Other Authorities**

1 Witkin, Contracts (10th ed. 2012 supp.) Nature of Restitution § 1013          18

*Atchison v. Hiwav Fed. Credit Union*,
   No. 12-2143 (DWF/FLN), 2013 U.S. Dist. LEXIS 38532, at *11 (D. Minn. Mar. 20, 2013)   13

*Capital One, N.A. v. Massev*,
   2011 U.S. Dist. LEXIS 83817, 2011 WL 3299934, at *3 (S.D. Tex. Aug. 1, 2011)   12

*Cooper v. Watson (In re Cooper)*,
   No. 12-17745-B-13, 2014 Bankr. LEXIS 697, at *34 (Bankr. E.D. Cal. Feb. 18, 2014)   11

*FAR E. Nat'l BANK v. NOLAN Fin. Corp.*,
   G034653, 2005 Cal. App. Unpub. LEXIS 9584, at *7 (Oct. 20, 2005)   12

3437278.1

# TABLE OF AUTHORITIES

Page

*Gallagher v. Wells*,
  No. 2:08-cv-03071 JFM (C), 2012 U.S Dist. LEXIS 109155, at *15 (E.D. Cal. Aug. 2, 2012)   20

*Hanks v. Talbots Classics Nat'l Bank*,
  No. C 12-2612 SI, 2012 U.S. Dist. LEXIS 109934, at *3 n.2 (N.D. Cal. Aug. 6, 2012)   10

*I.R.S. Priv. Ltr. Rul. 2005-0207*, 2005 WL 3561135 (Dec. 30, 2005) (emphasis added)   12

*I.R.S. Priv. Ltr. Rul. 2005-0208*, 2005 WL 3561136 (Dec. 30, 2005)   12

*Nool v. Homeq Servicing*,
  2009 WL 2905745, *7 (E.D. Cal. 2009)   18

*North Country Fed. Credit Union v. Lamson*,
  2015 Vt. Super. LEXIS 42, *12   9

*Sims v. Commissioner*,
  No. 1336-01S, 2002 Tax Ct. Summary LEXIS 78, at *4 (T.C. June 26, 2002)   13

*U.S. v. Reed*,
  Civ. No. 09–210, 2010 WL 3656001, at *5–6 (E.D.Tenn. Sept. 14, 2010)   13

**Rules**

Fed.R.Civ.P. 56(c)   6

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

3437278.1

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant PNC Bank, N.A. ("PNC") hereby submits the following points and authorities in support of its Motion for Summary Judgment, or in the Alternative, Partial Summary Adjudication. PNC moves for summary judgment or partial summary adjudication as to all of Plaintiff Genet Habtemariam's ("Plaintiff") claims against it set forth in the Second Amended Complaint (the "Complaint"), including the second, third, fourth, fifth, sixth, and seventh claims contained therein.

## I.   INTRODUCTION

The lynchpin of Plaintiff's Complaint is the assertion that merely receiving a 1099-C Form cancels or voids a debt. It is undisputed that PNC did not intend to cancel the debt at issue, that it never told Plaintiff it would cancel the debt or that she was no longer obligated thereon, or that any subsequent holder of the debt told her it was cancelled, void, or unenforceable. To the contrary, PNC sent correspondence to Plaintiff explicitly stating that she was not released from her obligations under the Loan. Subsequent servicers or holders of the debt also sent Plaintiff correspondence inconsistent with the contention that the debt was cancelled or void. Simply put, this Action centers around one question: does issuance of a 1099-C Form cancel or void a debt despite a creditor not intending to do so and expressing that intention?

## II.   STATEMENT OF FACTS

### A.   The Property and Loan

Plaintiff purchased 7 Shipman Court, Sacramento, CA 95823 (the "Property") in 2001 for $210,000. (Separate Statement of Undisputed Material Facts ("UMF"), No. 1). From 2001-2005 Plaintiff used the Property as a rental. (UMF No. 2). In 2005, she moved into the Property and has lived there ever since. (UMF No. 3). Plaintiff obtained a first lien loan in favor of Gateway Bank in March 2007 for $348,000 (the "Gateway Loan"). (UMF No. 4). The Gateway Loan went into default, and she obtained a loan modification in September 2009 with a new balance of $389,999.65. (UMF No. 5).

Plaintiff obtained a second position Loan in favor of PNC (then National City Bank) in June of 2007 for $43,500.00 (the "Loan"). (UMF No. 6). Plaintiff admits that the Loan went into default in approximately April of 2009, and that loan modification and short sale efforts failed. (UMF Nos.

3437278.1

1  7, 8). Short sale attempts failed because the first lienholder, Gateway, did not consent to such a sale.

2  (UMF No. 9). Plaintiff admits that she knew she had to repay the Loan, make monthly payments on

3  the Loan until it was paid off in full, and that PNC could foreclose if she did not. (UMF Nos. 10, 11,

4  12). She also understood that PNC could sell or transfer the Loan. (UMF No. 13). Plaintiff also

5  understood that she was obligated to repay the Loan and make monthly payments even if she didn't

6  receive collection notices or monthly statements from PNC. (UMF No. 14).

7  **B.    The Form 1099-C and April 2010 Letter**

8  PNC issued a Form 1099-C to Plaintiff regarding the Loan. (UMF No. 15). By issuing the

9  1099-C, PNC did not intend to cancel, void, discharge, or forgive the Loan. (UMF No. 16). Instead,

10  on February 16, 2010, the Loan was approved to be charged off for accounting purposes, with the

11  lien to be retained. (UMF No. 17). PNC's internal records reflect that the Loan was designated as

12  "charge off…with lien retained." (UMF No. 18). In fact, in no way did PNC did not intend to

13  release Plaintiff of her obligations under the Loan. (UMF No. 19). Consistent with this, PNC never

14  informed Plaintiff that the Loan was discharged, forgiven, void, or cancelled, that she could cease

15  making payments on the Loan, or that it would release its lien secured by the Property. (UMF Nos.

16  19-21, 23). Further, PNC never instructed Plaintiff to claim the balance of the Loan as income.

17  (UMF No. 22). Indeed, Plaintiff never paid any taxes on the balance of the Loan. (UMF No. 25).

18  In fact, the Loan was charged off for accounting purposes, and the 1099-C was issued by mistake.

19  (UMF Nos. 17, 18, 24). Plaintiff solely bases her contention that she had to report the Loan balance

20  as income and that the Loan was cancelled or forgiven upon receipt of this 1099-C. (UMF Nos. 26,

21  60, 61).

22  In fact, prior to issuance of the 1099-C, on April 26, 2010, PNC sent a letter to Plaintiff (the

23  "April 2010 Letter"). (UMF No. 27). The April 2010 Letter explains in lay terms that the Loan has

24  been charged off, but that Plaintiff is still obligated under the Loan and that it remains enforceable.

25  Consistent with this, the letter states that PNC's investor indicated that PNC could stop trying to

26  collect from Plaintiff on account of the Loan. (UMF No. 28). However, this letter makes it clear

27  that this "does not release [Plaintiff] from [her] obligation to pay off [the] loan." (UMF No. 29).

28  The April 2010 Letter, PNC stated that it _may_ release its lien _if_ the Property is foreclosed upon by

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

3437278.1

1   the first lienholder.  (UMF No. 30).  Plaintiff further admits that as Gateway did not foreclose on the

2   Property, PNC was not going to release its lien per the terms of the April 2010 Letter. (UMF No.

3   31).

4       The April 2010 Letter goes on to state that "PNC Mortgage will report this decision to the

5   Credit Bureau as a code 97 ("unpaid balance reported as a loss by credit grantor")".  (UMF No. 32).

6   Plaintiff admits that she did not dispute this credit reporting.  (UMF No. 33).  In fact, Plaintiff agrees

7   that the credit reporting on the Loan by PNC was accurate.  (UMF No. 34).  The April 2010 Letter

8   further states that Plaintiff could "resolve this issue by contacting PNC Mortgage to arrange for

9   payment in full," which she failed to do.  (UMF No. 35).  Plaintiff admits the April 2010 Letter does

10  not state that the Loan was discharged, cancelled, forgiven, or that she should claim the Loan

11  balance as income.  (UMF Nos. 36-39).  Plaintiff did not send any correspondence disputing the

12  April 2010 Letter, or asserting that the Loan was cancelled or forgiven.  (UMF No. 40).  In fact,

13  Plaintiff admits that the April 2010 Letter states that it is "an attempt to collect a debt" and thus the

14  Loan was still in existence and that PNC could collect on it if the investor allow it to.  (UMF No.

15  41).  All of these indisputable facts and admissions run contrary to Plaintiff's position that the Loan

16  was cancelled or forgiven.

17      **C.    Transfers of the Loan**

18      On May 5, 2012, PNC sent Plaintiff a letter stating that the servicing of the Loan would be

19  transferred to BSI Financial Services, Inc. ("BSI").  (UMF No. 42).  Thereafter, the Loan was

20  transferred to USMR.  (UMF No. 43).  On July 17, 2012, USMR sent Plaintiff a Fair Debt

21  Collection Practices Act debt validation notice, yet Plaintiff did not dispute the validity of the Loan

22  in writing within thirty (30) days.  (UMF Nos. 44, 45).  Plaintiff admits that this letter is inconsistent

23  with the idea that the Loan was cancelled.  (UMF No. 46).  USMR then sent Plaintiff three loss

24  mitigation letters dated July 23, 2012, July 23, 2012, and July 25, 2012. (UMF No. 47).  Plaintiff

25  concedes that each of these letters appear to be an attempt to collect on the Loan and are inconsistent

26  with the idea that the Loan was cancelled.  (UMF No. 48).

27      Subsequently, the Loan was transferred to Diversified Loan Services ("DLS").  DLS sent

28  letters to Plaintiff dated December 18, 2014, January 5, 2015, January 15, 2015, and February 17,

3

**MEMORANDUM OF POINTS AND AUTHORITIES**

1   2015. (UMF No. 49). Plaintiff admits that each of these letters was seeking to collect on the Loan
2   and would be inconsistent with the idea that the Loan was cancelled. (UMF No. 50). The Loan was
3   eventually transferred to Vida Capital Group, LLC ("Vida"), which foreclosed upon the Property.

4        It is undisputed that PNC, as well as all subsequent holders or services of the Loan, never
5   told Plaintiff that the Loan was discharged, forgiven, cancelled, or that she could cease payments on
6   the Loan. (UMF Nos. 21, 23, 51-54). These parties also never told Plaintiff that they would release
7   the lien upon the Property. (UMF No. 20, 55).

8        PNC never told her it would cancel the Note or Deed of Trust, that it could no longer sell or
9   transfer the Loan, or that she could sell the Property and not pay off its lien. (UMF Nos. 56-59).
10  Plaintiff also does not allege that there was any sort of agreement with PNC to modify the Note and
11  Deed of Trust, or to cancel, or forgive the Loan. Plaintiff solely bases her contention that the Loan
12  was cancelled, void, forgiven, and that she had to report the Loan balance as income due to receipt
13  of the 1099-C. (UMF Nos. 26, 60, 61).

14      **D.**    **Breach of Contract Allegations and Damages**

15       In her Complaint, Plaintiff alleges that the Loan was subject to some sort of settlement that
16  PNC breached. (Compl., ¶¶ 55-64). However, Plaintiff has not received any notice, settlement
17  check, or release related to any settlement. (UMF Nos. 62-64). Indeed, Plaintiff has no evidence
18  that the Loan was involved in any settlement whatsoever. (UMF No. 65). Simply put, the Loan was
19  never part of any settlement, and Plaintiff's breach of contract claim is meritless.

20       At the time of the foreclosure in February of 2016, Plaintiff estimates the value of the
21  Property to have been $300,000. (UMF No. 66). The balance of the first position Gateway Loan at
22  the time of the sale was $372,000, leaving no equity in the Property. (UMF No. 67). Thus, even if
23  the foreclosure of the Property by Vida was improper, Plaintiff was not deprived of any equity in the
24  Property.

25       Plaintiff admits that PNC did not foreclose on the Property and is not in possession of any of
26  her money or property. (UMF Nos. 68, 69). She did not make payments to PNC after the issuance
27  of the 1099-C and does not contend that PNC failed to account for any of her payments. (UMF Nos.
28  70, 71). In fact, Plaintiff is still in possession of the Property. (UMF No. 72).

**MEMORANDUM OF POINTS AND AUTHORITIES**

3437278.1

## III.    LEGAL STANDARD

A motion for summary judgment may be granted when there are no issues of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).  The standard for summary adjudication is the same.  *See State of Cal.* v. *Campbell,* 138 F.3d 772, 780 (9th Cir. 1998). The movant must point to those portions of the record that demonstrate the absence of any genuine issue of material fact and all reasonable inferences are drawn in favor of the non-movant. *Celotex Corp.* v. *Catrett,* 477  U.S. 317, 323 (1986); *See, e,g., Adickes* v. *SH Kress* & *Co.,* 398 U.S. 144, 157 (1970); *Bank Leumi Le-Israel, B.M* v. *Lee,* 928 F.2d 232,  236 (7th Cir. 1991). Summary judgment should be granted when it is clear that the non-moving party cannot carry their burden of persuasion at trial on one or more elements. *See generally, Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).

To defeat a motion for summary judgment, the nonmoving party must come forward with significant probative evidence in support of its answer. *See Capital Imaging* v. *Mohawk Valley Medical Association,* 996 F.2d 537,542 (2nd Cir. 1993), *cert. denied,* 510 U.S. 94 (1993). "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T. W Elec. Servo* v. *Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). Summary judgment shall be granted if the moving party demonstrates that the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See Zoslow v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

## IV.    ARGUMENT

### A.    Plaintiff's Cancellation of Instruments Claim Fails

Plaintiff's argument that the Note and Deed of Trust are void and thus are subject to cancellation rests upon the premise that the Loan was discharged or forgiven by PNC via issuance of the 1099-C.  Absent the Loan being void, any decree for cancellation of instruments will be

**MEMORANDUM OF POINTS AND AUTHORITIES**

3437278.1

1   conditioned upon the restoration (tender) of any consideration received by plaintiff. *Smith v.*

2   *Williams*, 55 Cal.2d 617, 620 (1961).  Indeed, Plaintiff cannot quiet title as a matter of law until she

3   pays or offers to pay the debt.  *See Booth v. Hoskins*, 75 Cal. 271, 276 (1888); *Mix v. Sodd*, 126

4   Cal.App. 3d 386, 390 (1981).   Here, Plaintiff admits to the default under the Loan, and admits she

5   never paid the Loan off in full.  (UMF Nos. 7, 35).  Thus, this claim rests solely on Plaintiff's

6   contention that the issuance of the 1099-C by PNC operated to cancel or discharge the Loan.  As

7   discussed below, such a position is untenable and summary judgment should be granted in PNC's

8   favor.

9   ///

10   ///

11           1.       **PNC Did Not Forgive or Discharge the Loan**

12                    a.       **A "Charge off" Does not Forgive or Discharge a Debt**

13           In the instant Action, it is undisputed that PNC did not intend to forgive or discharge the

14   Loan, but instead charged off the Loan in its system.  (UMF Nos. 16-19).  It is also undisputed that

15   PNC approved the Loan to be charged off for accounting purposes on February 16, 2010, and that its

16   internal records indicate that the Loan was designated as "charge off…with lien retained."  (UMF

17   Nos. 17, 18).  PNC explicitly informed Plaintiff in the April 2010 Letter that "PNC Mortgage will

18   report this decision to the Credit Bureau as a code 97 ("unpaid balance reported as a loss by credit

19   grantor")".[1]  (UMF No. 32).  Plaintiff admits that this reporting was accurate and thus she did not

20   dispute the same.  (UMF Nos. 33, 34).

21           Plaintiff readily admits that PNC, as well as all subsequent holders or services of the Loan,

22   never told Plaintiff that the Loan was discharged, forgiven, cancelled, or that she could cease

23   payments on the Loan. (UMF Nos. 21, 23, 51-54).  These parties also never told Plaintiff that they

24   would release the lien upon the Property.  (UMF No. 20, 55).  PNC never told her it would cancel

----

27   [1] Experian publishes a Glossary of Account Conditions and Payment Status, which lists the Account
     Condition of CHARGEOFF as a Code 97, with an explanation of "Unpaid balance reported as a
28   loss."  See https://www.experian.com/assets/access/arf8-glossary.pdf.

**MEMORANDUM OF POINTS AND AUTHORITIES**

3437278.1

1  the Note or Deed of Trust, that it could no longer sell or transfer the Loan, or that she could sell the

2  Property and not pay off its lien.  (UMF Nos. 56-59).  Plaintiff solely bases her contention that the

3  Loan was cancelled, void, forgiven, and that she had to report the Loan balance as income due to

4  receipt of the 1099-C. (UMF Nos. 26, 60, 61).  However, this 1099-C was issued by mistake. (UMF

5  No. 24).

6     Indeed, PNC merely charged off the Loan, which does not amount to a discharge or

7  forgiveness of the debt.  *See North Country Fed. Credit Union v. Lamson*, 2015 Vt. Super. LEXIS

8  42, *12 ("The term "charge off" relating to loans is an accounting term that means that the [bank] no

9  longer shows an outstanding loan balance on its books as an asset for federal regulatory purposes. As

10  a technical accounting term, it does not mean that a credit union or bank legally relinquishes the

11  right to pursue collection of the debt or waives right to repayment."). The California Court of Appeal

12  for the Fourth District recently held that a charged off debt is valid, collectable, and can accrue

13  interest even when statements are no longer sent to the borrower.  *Cavalry SPV I, LLC v. Watkins*, 36

14  Cal. App. 5th 1070, 1088, 249 Cal. Rptr. 3d 334, 349 (2019).  Further, the California Civil Code

15  defines a charged off consumer debt as a "debt that has been removed from a creditor's books as an

16  asset and treated as a loss or expense."  Cal. Civ. Code § 1788.50(a)(2).  Indeed, a debt that is

17  "charged off" is not forgiven or otherwise made current with respect to the debtor.  Rather, it is a

18  "declaration by a creditor…that an amount of debt is unlikely to be collected…[t]he purpose of

19  making such a declaration is to give the bank a tax exemption on the debt…[t]he charge-off, though,

20  does not free the debtor of having to pay the debt." *Hanks v. Talbots Classics Nat'l Bank*, No. C 12-

21  2612 SI, 2012 U.S. Dist. LEXIS 109934, at *3 n.2 (N.D. Cal. Aug. 6, 2012).  Accordingly, PNC's

22  act of charging off the Loan did not forgive, cancel, or otherwise discharge the Loan.

23        **b.**  <u>**There was No Modification of the Note, Deed of Trust, or**</u>

24        <u>**Agreement between the Parties to Forgive or Cancel the Loan**</u>

25     Conspicuously absent from Plaintiff's Complaint is any alleged agreement with PNC to

26  forgive the Loan.  PNC and Plaintiff are parties to two contracts at issue, namely the Note and Deed

27  of Trust.  Said contracts can be "subsequently modified with the assent of the parties thereto,

28  provided the same elements essential to the validity of the original contract are present." *Carlson,*

**MEMORANDUM OF POINTS AND AUTHORITIES**

*Collins, Gordon & Bold v. Banducci*, 257 Cal. App. 2d 212, 223, 64 Cal. Rptr. 915 (1967) (citation omitted). California law requires mutual consent by the contracting parties to do so. *See* Cal. Civ. Code §§ 1550, Cal. Civ. Code § 1565.  The California Civil Code also makes it clear that "[c]onsent is not mutual, unless the parties all agree upon the same thing in the same sense." Cal. Civ. Code § 1580. In other words, "there is no contract until there has been a meeting of the minds on *all* material points." *Banner Entm't v. Superior Court*, 62 Cal. App. 4th 348, 357-58, 72 Cal. Rptr. 2d 598 (1998) (emphasis in original).  Further, any failure in the meeting of the minds on all material aspects prevents the formation of a contract even though the parties have orally agreed upon some of the terms or have taken some action related to the contract. *Grove v. Grove Valve & Regulator Co*. (1970) 4 Cal. App. 3d 299, 311-312 [84 Cal. Rptr. 300].  Indeed, consent is measured by the parties' objective "words and acts, and not their unexpressed intensions or understandings." *Bustamante v. Intuit, Inc*., 141 Cal. App. 4th 199, 208, 45 Cal. Rptr. 3d 692 (2006).

Here, Plaintiff does not allege any agreement with PNC to cancel or forgive the Loan.  She merely *interpreted* the 1099-C as PNC releasing her from her obligations under the Loan.  However, her unilateral and subjective understanding of this document is not binding upon PNC and cannot serve as the basis for any modification (i.e. forgiveness) of the Note or Deed of Trust.  Puzzlingly, despite subjectively believing that this document created an unprompted and unprecedented windfall in her favor, Plaintiff never contacted PNC regarding the 1099-C.  (UMF No. 73).  It is also undisputed that PNC never told Plaintiff that the Loan was discharged, forgiven, cancelled, or that she could cease payments on the Loan. (UMF Nos. 20-23).  To the contrary, the April 2010 Letter makes it clear that PNC did not "release [Plaintiff] from [her] obligation to pay off [the] loan." (UMF No. 29).  Furthermore, PNC also never told Plaintiff that it would release its lien, cancel the Note or Deed of Trust, or that it could no longer sell or transfer the Loan.  (UMF Nos. 20, 56-59).  Simply put, PNC never expressed consent to forgive or cancel the Loan or otherwise modify the Note and Deed of Trust.

Even if PNC's consent was somehow found to be expressed, any modification of the Note or Deed of Trust fails for lack of consideration. A modification or supplemental agreement that varies the terms of the original contract requires supporting consideration. *Krobitzsch v. Middleton*, 72 Cal.

3437278.1

1  App. 2d 804, 808, 165 P.2d 729 (1946).   Indeed, modification of a contract to effectuate a

2  forgiveness of debt requires supporting consideration.  *See Cooper v. Watson (In re Cooper)*, No.

3  12-17745-B-13, 2014 Bankr. LEXIS 697, at *34 (Bankr. E.D. Cal. Feb. 18, 2014) (finding no

4  modification in part due to lack of consideration for forgiveness of debt via relief from stay

5  stipulation).   Further, any such agreement would be subject to the statute of frauds.  *Khan v.*

6  *CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1137 (E.D. Cal. 2013)

7       It is therefore abundantly clear that Plaintiff's contractual obligations have not been

8  modified, and no forgiveness of debt could have been effectuated.

9  ///

10  ///

11       2.    **PNC's Issuance of the 1099-C Did not Cancel or Forgive the Loan**

12            a.    **The Majority View**

13       Courts in the Ninth Circuit have not addressed the issue of whether issuance of a Form 1099-

14  C alone creates a triable issue of fact as to if the subject debt has been cancelled or forgiven.

15  However, the majority of courts that have examined the issue have concluded that it does not.[2]

16       First, the IRS itself recognizes that the Form 1099-C is *not* a declaration by the creditor that

17  the debt has been discharged.  In an Internal Revenue Service Information Letter dated October 7,

18  2005, the IRS responded to an inquiry from a debt collection entity concerning the significance of

19  Form 1099-C, saying:

20       To briefly address your concerns about whether courts may view the filing
     of a Form 1099-C as a written admission that the creditor discharged the
21     debt, and that debtors would be less willing to pay after your organization
     files a Form 1099-C, you should note the following.  **The Internal Revenue**
22     **Service does not view a Form 1099-C as an admission by the creditor that**
     **it has discharged the debt and can no longer pursue collection.**

---

[2] The California Court of Appeal addressed this very issue, and while it did so in an unpublished opinion, the analysis utilized under California law is instructive.  The Court held that the issuance of a 1099-C does not operate to extinguish a debt when the creditor did not intend to do so, and any argument that the 1099-C acts as a release is defeated by the mistaken issuance of said form.  *FAR E. Nat'l BANK v. NOLAN Fin. Corp.*, G034653, 2005 Cal. App. Unpub. LEXIS 9584, at *7 (Oct. 20, 2005).

**MEMORANDUM OF POINTS AND AUTHORITIES**

3437278.1

1  *I.R.S. Priv. Ltr. Rul. 2005-0207*, 2005 WL 3561135 (Dec. 30, 2005) (emphasis added); *see also,*

2  *I.R.S. Priv. Ltr. Rul. 2005-0208*, 2005 WL 3561136 (Dec. 30, 2005) ("Section 6050P and the

3  regulations do not prohibit collection activity after a creditor reports by filing a Form 1099-C.").

4          Citing the IRS's own interpretation of the issue, courts have held that "Form 1099-C [is] a

5  means for satisfying a reporting obligation and not an instrument effectuating a discharge of debt or

6  preventing a creditor from seeking payment on a debt." *FDIC v. Cashion,* 720. F.3d 169, 179 (4th

7  Cir. 2014) (granting summary judgment in favor of the lender); *see also, Capital One, N.A. v.*

8  *Massey*, 2011 U.S. Dist. LEXIS 83817, 2011 WL 3299934, at *3 (S.D. Tex. Aug. 1, 2011) (holding

9  that a Form 1099-C does not discharge a debtor from liability; therefore, "the fact that Plaintiff issued

10  a 1099-C in relation to the Borrowers' indebtedness is irrelevant and does not raise a genuine issue of

11  material fact"); *In re Zilka*, 407 B.R. 684, 689 (Bankr. W.D. Pa. 2009) (holding that Forms 1099-C,

12  as a matter of law, do not themselves operate to legally discharge debtors from liability on those

13  claims that are described in such Forms 1099-C); *Leonard v. Old Nat'l Bank Corp.,* 837 N.E.2d 543,

14  545-46 (Ind. Ct. App. 2005) (filing a Form 1099-C is merely an informational filing with the IRS, and

15  thus does not operate to cancel debt itself); *U.S. v. Reed,* Civ. No. 09–210, 2010 WL 3656001, at *5–

16  6 (E.D.Tenn. Sept. 14, 2010) (Form 1099-C as a matter of law does not discharge a debtor's

17  liability); *Sims v. Commissioner*, No. 1336-01S, 2002 Tax Ct. Summary LEXIS 78, at *4 (T.C. June

18  26, 2002) (Form 1099-C "does nothing to independently establish that [plaintiff's] debt was

19  discharged"); *Atchison v. Hiway Fed. Credit Union*, No. 12-2143 (DWF/FLN), 2013 U.S. Dist.

20  LEXIS 38532, at *11 (D. Minn. Mar. 20, 2013) ("a Form 1099-C does not operate alone to legally

21  discharge a debtor from liability").

22          The rule is explained in the Treasury Regulations as follows:

23          …a discharge of indebtedness is deemed to have occurred, except as
           provided in paragraph (b)(3) of this section,[3] if and only if there has
24          occurred an identifiable event described in paragraph (b)(2) of this section,
           whether or not an actual discharge of indebtedness has occurred on or before
25          the date on which the identifiable event has occurred.

26  _____

27

28  [3] 26 C.F.R. § 1.6050P-1(b)(3), inapposite here, provides, "If a discharge of indebtedness occurs before the date on which
   an identifiable event occurs, the discharge may, at the creditor's discretion, be reported under this section."

10

**MEMORANDUM OF POINTS AND AUTHORITIES**

3437278.1

26 C.F.R. § 1.6050P-1(a)(1).

The Treasury Regulations define an "identifiable event" as any of the following:

(A) A discharge of indebtedness under Title 11 of the United States Code (bankruptcy);

(B) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable in a receivership, foreclosure, or similar proceeding in a federal or State court, as described in IRC section 368(a)(3)(A)(ii) (other than a discharge described in paragraph (b)(2)(i)(A) of this section);

(C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding;

(D) A cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness;

(E) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable pursuant to a probate or similar proceeding;

(F) A discharge of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration;

(G) A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt; or

(H) In the case of an entity described in section 6050P(c)(2)(A) through (C), the expiration of the non-payment testing period, as described in Treas. Reg. § 1.6050P-1(b)(2)(iv).

26 C.F.R. § 1.6050P-1(b)(2).

As the foregoing list demonstrates, the Form 1099-C does not, in and of itself, signal that a debt is no longer collectible.  Indeed, as the *Cashion* court observed,

Without more [than Form 1099-C having been filed], it is impossible for a court to know what the existence of a filed Form 1099-C means. It may mean the debt has been discharged; it may mean the creditor intended to discharge the debt in the future; or it may mean that another of the 'identifiable events' in the regulation occurred apart from the actual discharge…

*Cashion,* 720. F.3d 169, 180.

Here, it is undisputed that PNC did not intend to forgive or discharge the Loan, but instead charged off the Loan in its system. (UMF Nos. 16-19). It is further undisputed that PNC approved the Loan to be charged off for accounting purposes on February 16, 2010, and that its internal records indicate that the Loan was designated as "charge off…with lien retained." (UMF Nos. 17, 18). Finally, Plaintiff admits that PNC, as well as all subsequent holders or services of the Loan, never told Plaintiff that the Loan was discharged, forgiven, cancelled, or that she could cease payments on the Loan. (UMF Nos. 20, 21, 51-54). These parties also never told Plaintiff that they would release the lien upon the Property. (UMF No. 55). Correspondence received from these parties was also contrary to the Plaintiff's theory that the Loan was cancelled. (UMF Nos. 46, 48, 50). PNC also never told her it would cancel the Note or Deed of Trust, that it could no longer sell or transfer the Loan, or that she could sell the Property and not pay off its lien. (UMF Nos. 56-59). In fact, PNC sent Plaintiff the April 2010 Letter, which explicitly told her she was not being released from her obligations under the Loan. (UMF No. 27). In fact, the 1099-C was issued by PNC by mistake, and therefore does not reflect any act to cancel, forgive, or discharge the Loan. (UMF No. 24). Not only is the majority view well-reasoned and supported by the IRS' interpretation of its own regulations, but it also does not allow for cancellation of a debt despite the lender not intending to do so. Holding otherwise would allow an informational filing to destroy the contractual relationship between parties, and result in an unintended windfall for one party and a draconian loss for the other.

Accordingly, the majority view should be adopted by this Court. As a result, PNC's issuance of the 1099-C does not operate to discharge or forgive the Loan as a matter of law.

### b.    The Minority View

A small minority of courts hold that issuance of a 1099-C is prima facie evidence of intent to discharge a loan, at which point the burden shifts to the creditor to show that the 1099-C was issued for another reason or without intent to discharge or forgive the debt.

Even if the minority view that issuance of a 1099-C provides a presumption that a lender cancelled a debt is adopted, the lender can still attempt to collect the debt if it can show that despite sending the 1099-C, the lender did not intend to cancel the debt. *See Amtrust Bank v. Fossett*, 223 Ariz. 438, 438, 224 P.3d 935, 935 (Ct. App. 2009); *Cashion,* 720. F.3d 169, 178 ("a small minority

**MEMORANDUM OF POINTS AND AUTHORITIES**

1    of the lower courts have held…that filing a Form 1099-C with the IRS constitutes prima facie

2    evidence of an intent to discharge a loan, at which point the burden of persuasion shifts to the

3    creditor to proffer it *was filed by mistake* or pursuant to another triggering event in the regulation."

4    (emphasis added)).  Here, PNC did not intend to cancel, void, discharge, or forgive the Loan.  (UMF

5    No. 16).  No party to the Loan ever told Plaintiff that the Loan was discharged, forgiven, cancelled,

6    that she could cease payments on the Loan, or that the lien would be released. (UMF Nos. 51-55).

7    PNC never told her it would cancel the Note or Deed of Trust, that it could no longer sell or transfer

8    the Loan, or that she could sell the Property and not pay off its lien.  (UMF Nos. 20, 21, 23, 56-59).

9    Plaintiff solely bases her contention that the Loan was cancelled, void, forgiven, and that she had to

10    report the Loan balance as income on receipt of the 1099-C. (UMF Nos. 26, 61, 62).   To the

11    contrary, PNC made it clear to Plaintiff that it did "not release [Plaintiff] from [her] obligation to pay

12    off [the] loan."  (UMF No. 29).  This April 2010 Letter explicitly informs Plaintiff of PNC's intent,

13    and makes it clear she must still make arrangements to pay the Loan in full.  In fact, the issuance of

14    the 1099-C was a mistake, which is one of the rationales articulated in *Cashion* that would rebut the

15    prima facie evidentiary effect of issuance of the 1099-C under the minority view.  (UMF No. 24;

16    *Cashion,* 720. F.3d 169, 178).  Thus, even if the minority view is adopted, it is abundantly clear that

17    the 1099-C was not issued in order to forgive, discharge, or cancel the Loan.  Accordingly, summary

18    judgment should be granted in PNC's favor.

19       Plaintiff may argue that she relied upon the 1099-C and reported the balance of the Loan as

20    income on her taxes, and thus PNC should be estopped from asserting that the Loan is valid.  First,

21    PNC never instructed Plaintiff to claim the balance of the Loan as income.  (UMF No. 22).  Second,

22    it is undisputed that Plaintiff did not pay any taxes on this amount.  (UMF No. 25).  A necessary

23    element of equitable estoppel is detrimental reliance. *Garamendi v. Golden Eagle Ins. Co.* (2004)

24    116 Cal.App.4th 694, 722-723.   Thus, any argument that Plaintiff reasonably and detrimentally

25    relied upon the 1099-C (based upon her subjective and incorrect interpretation of the document),

26    fails.

27       **B.**     <u>**Plaintiff's Unfair Business Practices Claim Fails**</u>

28       Plaintiff's third claim against PNC is for California Business and Professions Code § 17200

13

3437278.1

1    *et seq.* ("UCL").  A UCL claim must be pled with particularity.  *Khoury v. Maly's of California, Inc.*

2    (1993) 14 Cal.App.4th 612, 619; *Durrell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1366

3    (citation omitted).  Further, one has standing to assert a UCL claim only if the person has (1)

4    "suffered injury in fact," and (2) "lost money or property as a result of such unfair competition."

5    (Bus. & Prof. Code § 17204). In *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 320–21 (2011),

6    the court stated "standing [under the UCL] is limited to any 'person who has suffered injury in fact

7    and has lost money or property' as a result of unfair competition." Absent such a showing, a plaintiff

8    lacks standing to sue under the UCL.  *See In re Tobacco II Cases* (2009) 46 Cal.4th 298, 327-29. In

9    *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal.App.4th 497 (2013), the court upheld a ruling

10   sustaining a demurrer to a claim for a violation of UCL, finding a plaintiff had to demonstrate a

11   causal link between her economic injury (an impending foreclosure), and the alleged unlawful acts.

12   *Jenkins*, 216 Cal.App.4th at 522-23. The court in *Jenkins* concluded plaintiff's injury was due to her

13   own default on her loan, and she could not show any violations had a causal link to her economic

14   injuries. (*Id*).  In the absence of allegations that he incurred a "personal, individualized loss of

15   money or property in any nontrivial amount" that were caused by defendant's allegedly unfair and

16   fraudulent conduct, plaintiff has not alleged facts sufficient to state a cause of action for violation of

17   Business and Professions Code § 17200.  *Kwikset*, 51 Cal.4th at 325.  Here, Plaintiff's UCL claim

18   fails on numerous grounds.

19        First, Plaintiff lacks standing to bring her UCL claim.  Plaintiff readily admits that PNC is

20   not in possession of any of her money or property.  (UMF No. 69).  Nor does Plaintiff contend that

21   PNC failed to account for any of her payments on the Loan.  (UMF No. 71).  Indeed, Plaintiff did

22   not make any payments to PNC after issuance of the 1099-C.  (UMF No. 70).  Finally, PNC did not

23   foreclose upon the Property, and Plaintiff is still in possession of the same.  (UMF No. 68, 72).  Even

24   if it did, there was no equity in the Property above the Gateway Loan at the time of sale, and thus

25   Plaintiff was not deprived of any equity in the Property.  (UMF Nos. 66, 67).  Accordingly, Plaintiff

26   had not lost any money or property that is subject to disgorgement or restitution.

27        Second, Plaintiff cannot show that any resulting harm (i.e. foreclosure of the Property by

28   Vida), was not due to Plaintiff's own acts.  Plaintiff readily admits that the Loan was in default since

**MEMORANDUM OF POINTS AND AUTHORITIES**

3437278.1

1  April of 2009.  (UMF No. 7).  Further, all short sale and loss mitigation efforts had failed.  (UMF

2  No. 8).  Thus, much like in *Jenkins*, Plaintiff's damages are due to her own default, and she cannot

3  show a causal link between PNC's acts and her economic injuries.

4  Third, Plaintiff is not entitled to any relief under the UCL.  Damages allowed under a private

5  UCL action are generally limited to injunctive relief and restitution.  *Clark v Superior Court* (2010)

6  50 Cal.4th 605, 614.  Restitution is "[d]esigned to restore the aggrieved party to his or her former

7  position by return of the thing or its equivalent in money."  1 Witkin, Contracts (10th ed. 2012 supp.)

8  Nature of Restitution § 1013 *citing Philpott v. Superior Court* (1934) 1 Cal.2d 512, 517.  Restitution

9  under the UCL is confined to restoration of any interest in money or property, real or personal,

10 which may have been acquired by means of such unfair competition.  Bus. & Prof. Code, § 17203;

11 *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 336.  Thus, Plaintiff must show that PNC is

12 in possession of her money or property acquired as a result of unfair competition.  However, Plaintiff

13 readily admits that PNC is not in possession of any of her money or property, and that the Property

14 was not foreclosed upon by PNC.  (UMF Nos. 68, 69).

15 Finally, as outlined herein, each and every one of Plaintiff's claims fail.  A UCL claim is

16 derivative in nature, and thus depends on the "viability of an underlying claim of unlawful conduct."

17 *Nool v. Homeq Servicing,* 2009 WL 2905745, *7 (E.D. Cal. 2009).  Accordingly, as each of

18 Plaintiff's other claims fail, so must her UCL claim.

19 Accordingly, for the numerous reasons set forth above, Plaintiff's UCL claim is not viable,

20 and summary judgment should be entered in PNC's favor.

21 **C.    Plaintiff's Negligence Claim Fails**

22 In order to succeed on her negligence claim, Plaintiff must establish that: (1) the defendant

23 had a legal duty to conform to a standard of conduct to protect the Plaintiff, (2) the defendant failed

24 to meet this standard of conduct, (3) the defendant's failure was the proximate or legal cause of the

25 resulting injury, and (4) the Plaintiff was damaged.  *Ladd v. County of San Mateo*, 12 Cal.4th 913,

26 917 (1996).  The determination of whether a duty exists is primarily a question of law."  *Eddy v.*

27 *Sharp*, 199 Cal.App.3d 858, 864 (1988).  Generally, a financial institution owes no duty of care to a

28 borrower when its involvement in the loan transaction does not exceed the scope of its conventional

15

3437278.1

1  role as a mere lender of money. *See Nymark v. Heart Federal Savings*, 231 Cal. App. 3d 1089, 1096

2  (1991).  Plaintiff's argument is that PNC cancelled or discharged the debt which severed the lender-

3  borrower relationship, and PNC thereafter failed to record a release of the Deed of Trust within

4  thirty days in violation of California Civil Code Section 2941(a).  (Compl., ¶ 67).  As discussed

5  above, PNC did not cancel or discharge the debt, and therefore was not obligated by law to release

6  the Deed of Trust.  PNC merely charged off the Loan, which is a common accounting practice by

7  lenders, and does not release the Plaintiff from her obligations under the Loan.  PNC made this clear

8  in the April 2010 Letter.  Accordingly, PNC did not violate any statute, was not obligated to release

9  the Deed of Trust, and did not owe a duty of care to Plaintiff.  Accordingly, summary judgment

10  should be entered in PNC's favor.

11  ### D.   Plaintiff's Declaratory Relief Claim Fails

12  Plaintiff's claim for declaratory relief appears to seek a declaration regarding the respective

13  rights of the parties, and seeks an order directing PNC to release the Deed of Trust due to issuance of

14  the 1099-C. (Compl., ¶ 54).  A complaint for declaratory relief must "set forth facts showing the

15  existence of an actual controversy relating to the legal rights and duties of the respective parties

16  under a written instrument ... and requests that the rights and duties of the parties be adjudged by the

17  Court." *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2002) 82 Cal.App.4th 592, 605. Moreover, the

18  availability of another form of adequate relief justifies denial of declaratory relief.  *C.J.L. Const. Inc.*

19  *v. Universal Plumbing* (1993)18 Cal.App.4th 376, 390.   Here, as set forth above, there is no actual

20  controversy as to Vida's right to foreclose or the fact of Plaintiff's default under the Loan. PNC did

21  not cancel, discharge, or forgive the Loan and therefore was under no obligation to release the Deed

22  of Trust.  Further, declaratory relief is not an independent cause of action but instead a form of

23  equitable remedy. *See Batt v. City and Cty of San Francisco,* 155 Cal. App. 4th 65, 82 (Cal. Ct. App.

24  2007); *see also, Dills v. Delira Corp.,* 145 Cal. App.2d 124, 129 (Cal. Ct. App. 1956) (equitable

25  remedies are "dependant upon a substantive basis for liability, [and] they have no separate viability"

26  if all the [p]laintiff's other claims fail).  As set forth herein, Plaintiff has failed to adequately state

27  any other claim against PNC, her claim for Declaratory Relief must also fail. Accordingly, summary

28  judgment should be entered in PNC's favor.

16

**MEMORANDUM OF POINTS AND AUTHORITIES**

3437278.1

E.    **Plaintiff's Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing Claims Fail**

In order to succeed on her breach of contract claim, plaintiff must prove the following: (1) the existence of a contract, (2) plaintiffs' performance or excuse for nonperformance, (3) defendants' breach of the contract, and (4) the resulting damages to plaintiffs. *Reichert v. General Ins. Co. of America*, 68 Cal. 2d 822, 830, 69 Cal. Rptr. 321, 442 P.2d 377 (Cal. 1968). *Gallagher v. Wells*, No. 2:08-cv-03071 JFM (C), 2012 U.S Dist. LEXIS 109155, at *15 (E.D. Cal. Aug. 2, 2012).

As to her breach of the covenant of good faith and fair dealing claim, it is "nothing more than a cause of action for breach of contract." *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga,*175 Cal.App.4th 1306, 1344 (2009).   This is because this claim "does not impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement and it cannot contradict the express terms of a contract." *Guz v. Bechtel National, Inc.,* 24 Cal .4th 317, 349-350 (2000); *Storek & Storek Inc. v. Citicorp Real Estate, Inc.,* 100 Cal.App.4th, 44, 55 (1992).

In her Complaint, Plaintiff alleges that the Loan was subject to a settlement between PNC and the Department of Justice and the Consumer Financial Protection Bureau ("CFPB")[4].  (Compl., ¶¶ 56-57).  Plaintiff further alleges that PNC received credit for the 'discharge' of the Loan pursuant to the settlement agreement, which prompted the issuance of the 1099-C.  (*Id*.).  Plaintiff contends that she is a third-party beneficiary under this settlement, and by failing to release its lien, PNC breached this agreement.[5]  (*Id*. at 57, 64).   These allegations do not stand up to even a modicum of scrutiny.  First, nowhere in the consent order attached to the Complaint is there any mention of any benefit provided to PNC for 'discharging' or forgiving loans.  Second, no forgiveness of debt is

---

[4] Plaintiff also does not explain why the Court would have jurisdiction to enforce a consent order entered by another court.  Indeed, the U.S District Court for the Western District of Pennsylvania specifically retained jurisdiction for purposes of construction, modification, and enforcement of the consent order. (Compl., Exhibit A, at ¶ 29).

[5] Plaintiff does not allege that PNC breached the Note and Deed of Trust.  Even if she did, any such claim would be barred due to Plaintiff's admitted nonperformance under these contracts.

**MEMORANDUM OF POINTS AND AUTHORITIES**

3437278.1

1  contemplated, only payments to the borrowers impacted by the agreement.  Third, pursuant to the

2  plain terms of the agreement attached to Plaintiff's Complaint, a Plan Administer is appointed to

3  handle payments and relief afforded to borrowers under the agreement.  (Compl., Exhibit A, at ¶ 11).

4  This Administrator provides a list of impacted borrowers to the government plaintiffs, who review

5  the same and provide the amount(s) that each borrower will receive.  (*Id*. at ¶ 10).  No individual

6  borrower may request a review of these final payment amounts. (*Id*.).  The Administrator then

7  provides applicable payments to borrowers, who then must sign a release.  (*Id*. at ¶ 11).  However,

8  Plaintiff has not received any notice, settlement check, or release related to any settlement.  (UMF

9  Nos. 62-64).  Indeed, Plaintiff has no evidence that the Loan was involved in any settlement

10  whatsoever.  (UMF No. 65).  Simply put, the Loan was never part of any settlement, Plaintiff was

11  never a beneficiary thereunder, and Plaintiff's breach of contract claim is meritless.  For the same

12  reasons, Plaintiff's Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing

13  claims fail.  Accordingly, summary judgment should be entered in PNC's favor.

14  **V.    CONCLUSION**

15      For the foregoing reasons, PNC respectfully requests this Court grant summary judgment in

16  its favor, or in the alternative, partial summary adjudication.

17

18  DATED:  May 21, 2020                        WOLFE & WYMAN LLP

19

20                                          By: */s/ Jonathan C. Cahill*
                                              BRIAN H. GUNN
21                                              JONATHAN C. CAHILL
                                              Attorneys for Defendant
22                                          **PNC BANK, N.A.**

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

3437278.1