UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENET HABTEMARIAM,<br><br>Plaintiff,<br><br>v.<br><br>VIDA CAPITAL GROUP, LLC; US MORTGAGE RESOLUTION; PNC BANK, NATIONAL ASSOCIATION S/B/M NATIONAL CITY MORTGAGE and DOES 1 to 50, inclusive,<br><br>Defendants. | No. 2:16-cv-01189-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

By way of this action, Plaintiff Genet Habtemariam alleges that her real property at 7 Shipman Court, Sacramento, California was wrongfully subjected to foreclosure proceedings on a Second Deed of Trust that allegedly had been cancelled some five years prior by the owner of the Note, Defendant PNC Bank ("PNC").[1] Despite that cancellation, Plaintiff alleges the Note was sold and ultimately assigned by PNC to Defendant Vida Capital Group who proceeded with the foreclosure.

Presently before the Court are Defendant PNC Bank's Motion for Summary Judgment, or alternatively for Partial Summary Adjudication, which Defendant Vida Capitol Group has joined. Def. PNC Bank's Mot. for Summ. J., ECF No. 116; Def. Vida

---

[1] Defendants are referred to jointly unless otherwise indicated.

1

Capital Group's Joinder Mot., ECF No. 118. As set forth below, this Court GRANTS in part Defendants' Motion for Partial Summary Adjudication as to the breach of contract claim of the Second Amended Complaint ("SAC"), but otherwise DENIES Defendants' Motion for Summary Judgment as to the remaining causes of action in the SAC.[2]

**BACKGROUND**

In 2001, Plaintiff obtained a purchase money loan to buy a house located at 7 Shipman Court in Sacramento, California ("the subject property"). Pl.'s Statement of Undisputed Material Facts in Support of her Opp. to Defs.' Mot. for Summ. J., ECF No. 120 ("UMF"), UMF No. 1. Then, in April of 2007, she refinanced her initial loan through Gateway Bank FSB and took out a second mortgage from National City Bank, an entity which later merged into PNC. UMF No. 6. Plaintiff's second mortgage was secured by a Second Deed of Trust ("SDoT") recorded in 2007. Id.

Some three years later, in a letter dated April 26, 2010, PNC notified Plaintiff by mail that PNC would "discontinue collection and or foreclosure activity" with respect to the SDoT. Defs.' Mot. Summ. J. Ex. C, ECF No. 116. The letter went on to inform Plaintiff that while "[t]his does not release you from your obligation to pay off your loan, we may however release our lien against this property…" Id. PNC subsequently appears to have done just that. UMF Nos. 16-24. It issued an IRS Form 1099-C instrument denominated in boldface type as "Cancellation of Debt" bearing a cancellation date of June 29, 2010, and indicating that the entire $46,134.46 owed on the second mortgage was "canceled." Defs.' Mot. Summ. J. Ex. A, ECF No. 116.

Plaintiff claimed that at the time of receipt, she believed the 1099-C form cancelled her debt, and further, that she relied on the 1099-C as proof of PNC's intent to
///

---

[2] Having determined that oral argument would not be of material assistance, this matter was submitted on the briefs in accordance with E.D. Local Rule 230(g).

2

cancel the debt. Pl.'s Opp. Defs.' Mot. Summ. J. Disputed Material Facts, ECF No. 120, ("DMF"), DFM No. 1.

Unbeknownst to Plaintiff, PNC never recorded a release of lien as to its SDoT. UMF No. 17. Instead, PNC simply noted, internally, that the loan had been "charged off" for accounting purposes—not cancelled. UMF Nos. 17-18. While PNC claims it issued the 1099-C form by mistake, it never made any attempts to correct that alleged error. Pl.'s DMF No. 3.

For two years after issuing the 1099-C form, PNC did not attempt to contact the Plaintiff to collect on the debt. UMF No. 42. In fact, PNC's next communication with the Plaintiff occurred in May of 2012, when it sent a letter informing the Plaintiff that it assigned its purported interest in the loan to BSI Financial Services, Inc. ("BSI"). Id. Plaintiff ignored this letter, believing that the loan had been cancelled as the 1099-C form indicated.

The loan was thereafter transferred to Defendant U.S. Mortgage Resolution ("USMR"). UMF No. 43. USMR sent Plaintiff a series of collection letters, which Plaintiff initially ignored. Habtemariam Dep. 87, ECF No. 120. Upon receipt of the third collection letter, Plaintiff contacted USMR to dispute its collection attempts. Id. Believing PNC cancelled the loan, Plaintiff sent USMR a copy of the 1099-C form, after which USMR made no further attempts to contact the Plaintiff or foreclose on the loan. Id. at 88. The SDoT was eventually transferred to Diversified Loan Services ("DLS") sometime in 2014. Defs.' Mot. Summ. J. at 3, ECF No. 116.

When DLS contacted Plaintiff in early 2015 in an attempt to again collect on the instrument, Plaintiff responded by providing DLS with a copy of the Form 1099-C, asserting that the debt had been cancelled and was not collectable. The SDoT was transferred then to Vida Capital Group, LLC ("Vida"). Defs.' Mot. Summ. J. at 4, ECF No. 116. Vida thereafter recorded a Notice of Default on the subject property on September 22, 2015, and directed the trustee to transfer title to Vida itself through

///

1  non-judicial foreclosure proceedings which culminated in title transfer to Vida by deed
2  recorded on February 16, 2016.
3  On May 11, 2016, Vida filed an unlawful detainer action against Plaintiff. Plaintiff
4  was given a three-day notice to quit the premises. Rather than comply with that notice,
5  Plaintiff responded by commencing this action in state court on April 19, 2016. PNC
6  removed Plaintiff's lawsuit to this Court the same day, citing diversity of citizenship, and
7  then moved to dismiss the suit. After resolution of two motions to dismiss from PNC,
8  Plaintiff filed a SAC on July 25, 2017. Second Am. Compl., ECF No. 44. The next day,
9  Plaintiff also filed a Motion for Temporary Restraining Order ("TRO"). This Court granted
10 the TRO, but denied a preliminary injunction two weeks later. Order, ECF No. 67.
11 Defendants then answered the complaint, and after conducting discovery, now seek
12 summary judgment, or summary adjudication in the alternative, pursuant to Federal Rule
13 of Civil Procedure Rule 56. Defs.' Mot. Summ. J., ECF No. 116.

## STANDARD

17 The Federal Rules of Civil Procedure provide for summary judgment when "the
18 movant shows that there is no genuine dispute as to any material fact and the movant is
19 entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v.
20 Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to
21 dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.
22 Rule 56 also allows a court to grant summary judgment on part of a claim or
23 defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may
24 move for summary judgment, identifying each claim or defense—or the part of each
25 claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.
26 Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a
27 motion for partial summary judgment is the same as that which applies to a motion for
28 summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under

1 Rule [56(a)], its opponent must do more than simply show that there is some
metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore,
"[w]here the record taken as a whole could not lead a rational trier of fact to find for the
nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to
be believed, and all reasonable inferences that may be drawn from the facts placed
before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at
255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
obligation to produce a factual predicate from which the inference may be drawn.
Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,
810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

Plaintiff alleges six causes of action seeking the following relief: 1) vacate and set aside sale of real estate for wrongful foreclosure; 2) cancellation of recorded instruments; 3) unfair competition claim ("UCL"); 4) negligence; 5) declaratory relief; and 6) breach of contract.[3] Defendants correctly note, and the Plaintiff concedes, that the first three causes of action depend on whether Defendant PNC cancelled the debt. Defendants' arguments in favor of summary adjudication as to each of those claims will be addressed, in turn.

### A. Causes of Action One through Three

As noted above, causes of action one through three are dependent on whether the debt Plaintiff owed on her second mortgage was cancelled. The salient issue in this regard thus becomes whether issuance of the 1099-C form operated to clear Plaintiff's debt on the SDoT. Defs.' Mot. Summ. J., ECF No. 116. Neither the Ninth Circuit nor

---

[3] Plaintiff's SAC mis-numbers the causes of action. The last two causes of action, for declaratory relief and breach of contract, are both mistakenly denominated as the "Fifth Cause of Action." For the purposes of this Order, this Court construes the Breach of Contract claim as the "Sixth Cause of Action."

any published California court opinion has analyzed this question.  As such, Defendants urge the Court to adopt what it calls the "majority view" in making this assessment, while the Plaintiff maintains that the "so-called minority view" should be adopted.  Id.; and see Pl.'s Opp. Defs.' Mot. Summ. J., ECF No. 120.  Under the majority view, the 1099-C form is "a means for satisfying a reporting obligation and not an instrument effectuating a discharge of debt or preventing a creditor from seeking payment on a debt."  Accord. FDIC v. Cashion, 720 F.3d 169, 179 (4th Cir. 2014) (affirming summary judgment against borrower who only presented 1099-C form as proof of debt cancellation).  Conversely, the courts in the minority view have held that a 1099-C form can constitute prima facie evidence of intent to discharge a loan.  Amtrust Bank v. Fossett, 223 Ariz. 438, 224 P.3d 935 (Ariz. 2009).

### 1. Legal Import of 1099-C Form

This Court is less certain than the parties as to the existence of a split of authority.  Rather, it appears that the two approaches can be harmonized.  Under either approach, the 1099-C, alone, is likely insufficient to cancel the debt.  There must be some additional proof to demonstrate that the 1099-C is a valid modification of the underlying loan agreement between the parties and that the debt is cancelled.

Regardless, as a threshold matter, Defendants argue that the 1099-C form cannot function as a valid contract modification because it fails to meet the statute of frauds and it lacks consideration.  Defs.' Mot. Summ. J., ECF No. 116.  Defendants further argue that the alleged contract could not have been formed because it lacks "mutuality of assent."

#### a. Statute of Frauds

A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent.  Secrest v. Security National Mortgage Loan Trust 2002-2, 167 Cal. App. 4th 544, 552 (2008).  The signature of the party to be charged "need not be manually affixed, but may in some cases be printed, stamped or typewritten."  Chavez v. Indymac Mortgage Services,

219 Cal. App. 4th 1052, 1057 (2013) (citing Marks v. Walter G. McCarty Corp., 33 Cal. 2d 814, 820 (1949)). The signature to a memorandum may be any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer. Hilderbrand v. United States, 905 F. Supp. 774, 784 (E.D. Cal. 1995) (vacated on other grounds). An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds. Cal. Civ. Code § 1698(c).

The 1099-C form modifies the SDoT, which is subject to the statute of frauds as an agreement for "an interest [in real property]." See Cal. Civ Code § 1624(a)(3). Thus, in order for the 1099-C form to modify the SDoT, the 1099-C form must meet the statute of frauds. The 1099-C form is a writing, as demonstrated by exhibits by both parties. Defs.' Mot. Summ. J. Ex. A; Pl.'s Opp. to Defs.' Mot. Summ. J., Exhibit 1, ECF No. 120. Whether Defendant PNC memorialized the 1099-C form, as that verb is understood by Section 1624, is more complicated. Defendant PNC's name, mailing address, and phone number is printed on the 1099-C form under "Creditor's Name" box. Id. This typewritten name is evidence of PNC's intent to authenticate the writing as coming from PNC. Defendant PNC does not dispute the signature specifically, and provides no evidence to specifically dispute whether PNC printed their name on the 1099-C form with "an intention, actual or apparent, to authenticate the writing as that of [PNC]" Hilderbrand, 905 F. Supp. at 784, see also Donovan v. Rrl Corp., 26 Cal. 4th 261 (2001). Thus, failing to meet their burden on summary judgment to demonstrate no genuine dispute issue of material fact, Defendant PNC's statute of frauds argument fails.

### b. Mutual Assent

Under California law, contracts can be modified by subsequent agreements only with the parties' mutual assent. West v. JP Morgan Chase Bank, 214 Cal. App. 4th 780, 798 (2013); See also 1 Witkin Sum. Cal. Law, Contracts § 995 (11th ed. 2017). Mutual assent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understandings. Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 208 (2006); 1 Witkin Sum. Cal. Law, Contracts § 116 (11th ed.

2017). Written releases from obligations are valid with or without consideration. Cal. Civ. Code, § 1541 (West).[4]

PNC argues it did not intend to cancel the loan and that the 1099-C was issued by mistake.[5] The thrust of Defendant's argument is that its outward conduct cannot be construed as mutual assent to a contract modification cancelling the debt. Defs.' Mot. Summ. J., ECF No. 116. In support, Defendant PNC cites heavily to a letter it sent Plaintiff in April 2010, before it allegedly inadvertently sent the 1099-C form to the Defendant. Id. PNC also relies heavily on portions of the Plaintiff's deposition to assert that there is no dispute as to whether the Plaintiff understood that PNC did not mutually assent to cancelling the Plaintiff's debt. Defs.' Mot. Summ. J., ECF No. 116; UMF Nos. 37-41. Finally, PNC points to internal accounting mechanisms calling the disputed procedure a "charge-off," as opposed to debt cancellation. Id., and see UMF No. 18.

Defendants' Motion for Summary Judgment correctly identifies the proper standard for mutual assent. "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 208 (2006) (internal citations omitted). Further, the "existence of mutual assent is determined by . . . what the outward manifestations of consent would lead a reasonable person to believe." Id. Defendants argue that their conduct would not lead a reasonable person to believe mutual assent existed. However, "if the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed." Smith v. Simmons, 638 F. Supp. 2d 1180, 1188 (E.D. Cal 2009) (citing Bustamante,

---

[4] Defendants argue that the 1099-C form fails as a contract modification for lack of consideration. However, the language of § 1541 itself precludes this argument.

[5] The Defendants cite an unpublished California Appellate case for the proposition that 1099-C forms issued by mistake cannot be construed as a release of debt. This argument fails for two reasons: the court's holding there was dicta in an unpublished opinion, and second, the doctrine of mistake as it relates to releases applies when the releasor, under a misapprehension not due to his own neglect, issues the release. Casey v. Proctor, 59 Cal. 2d 97, 103 (1963). Here, Defendants were entirely under a misapprehension due to their own neglect.

9

141 Cal. App. at 208 for the legal standard in the context of summary judgment).

The evidence put forth by the Defendants regarding their objective intent, when viewed in a light most favorable to the nonmoving party, does not entitle them to a judgment as a matter of law. The evidence Defendants cite, such as the April 2010 letter and deposition testimony, could admit to more than one inference. For example, the April 2010 letter was sent to the Plaintiff months before Defendant PNC sent the 1099-C. A reasonable jury could conclude that this is evidence of Defendant PNC's objective intent in April 2010, rather than at the time Defendant PNC sent the 1099-C.

Further, Defendants' reliance on Plaintiff's deposition testimony is devoid of context. Defendants argue that admissions purportedly made in the deposition, which Defendants repeatedly characterize as "undisputed material facts," indicate that she did not believe the 1099-C cancelled the debt. Defs.' Mot. Summ. J., ECF No. 116. Defendants also use Plaintiff's alleged admissions to argue that no reasonable person would believe Defendant PNC and Plaintiff had mutually consented to cancel the debt. Id. However, the manner in which Plaintiff's admissions were made is important. Viewing the admissions in the context of the questions posed at deposition demonstrates that the Plaintiff was only conceding the 1099-C and the letters she received from Defendants, when viewed alone and divorced from the circumstances under which they were generated, did not necessarily evidence Defendant PNC's intent to cancel the debt. Habtemariam Dep. at 44–47, ECF No. 120. Whether that provides any evidence of Defendant PNC's objective intent is clearly disputed by other testimony, provided by Plaintiff, as to what ensued both during that time period and in the years that ensued. In sum, Plaintiff's deposition testimony is easily susceptible to more than one inference as to Defendant PNC's objective intent and does not support summary judgment as PNC alleges.

Significantly, too, Plaintiff points to the subsequent loan holders' actions as additional evidence of Defendant PNC's objective intent. In her deposition, Plaintiff recounts how USMR halted its collection efforts after Plaintiff sent USMR a copy of the

1099-C. Habtemariam Dep., ECF No. 120.  That evidence could also support a finding of mutual assent, in direct conflict with Defendants' evidence to the contrary.

Defendant PNC then claims that because the 1099-C form was allegedly sent to Plaintiff in error, any finding of mutual assent is thereby precluded.  As indicated above, to bolster that characterization PNC points to internal accounting mechanisms indicating it merely "charged off" the debt for accounting purposes.  PNC's reliance on internal communications as evidence of their objective intent, however, it is not consistent with the language of the 1099-C form.  The heading of the 1099-C form states "Cancellation of Debt" in bold letters.  Defs.' Mot. Summ. J. Ex. 1, ECF No. 116.  The very language of the form could lead a reasonable jury to conclude the parties agreed to cancel the debt owed under the SDoT.

As all of this amply demonstrates, the record now before the Court presents many disputed issues of material fact; namely, whether the 1099-C form and PNC's actions evidences an objective intent to cancel debt.  Those disputes preclude summary judgment.

### 2. Wrongful Foreclosure

For a First Cause of Action, Plaintiff alleges that Defendant Vida's foreclosure sale was wrongful, and accordingly seeks to set aside that sale. "A beneficiary or trustee under a deed of trust who conducts an illegal, fraudulent or willfully oppressive sale of property may be liable to the borrower for wrongful foreclosure." Yvanova v. New Century Mortgage Corp., 62 Cal. 4th 919, 929 (2016).  "A foreclosure initiated by one with no authority to do so is wrongful for the purposes of such an action."  Id.  In order to maintain a cause of action for wrongful foreclosure, the Plaintiff must demonstrate that (1) the defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff tendered the amount of the secured indebtedness or was excused from tendering." Chavez, 219 Cal. App. 4th at 1062.  A

///

plaintiff who properly alleges that the underlying debt is void, however, is excused from the tender requirement.  Id.

As the above analysis demonstrates, there is a genuine dispute of material fact regarding whether the underlying debt is void, thus making the subsequent assignment of the SDoT from Defendant PNC to Vida illegal.  Plaintiff has demonstrated a genuine dispute of fact regarding PNC's intent to cancel the loan.  If the SDoT was cancelled, then any subsequent transfer of that loan would be void.  See Yvanova, 62 Cal. 4th at 929.  Thus, the Plaintiff has shown a genuine dispute of fact that Defendant Vida lacked the authority to foreclose on the loan.  Defendant Vida's motion for summary adjudication as to the First Cause of Action therefore fails.

### 3. Cancellation of Recorded Instrument Claim

Plaintiff's Second Cause of Action seeks cancellation of the recorded instruments entered against her as a result of the foreclosure.  A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against who it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled.  Cal. Civ. Code Section 3412; see also Deutsche Bank National Trust Co. v. Pyle, 13 Cal App. 5th 513, 523 (2017). "To obtain cancellation, a plaintiff must allege the instrument is void or voidable and would cause serious injury if not cancelled." Pyle, 13 Cal. App. 5th at 523.

As discussed *supra*, the Plaintiff has met her burden demonstrating a genuine dispute of material facts regarding the legal status of the SDoT.  Defendant PNC may have indeed cancelled the debt under the SDoT, thus terminating the loan agreement.  Any subsequent transfers of the SDoT would be void.  See, e.g., Glaski v. Bank of America, 218 Cal. App. 4th 1079, 1094-97 (2013).  As such, Defendants' request for summary adjudication as to Plaintiff's Second Cause of Action is also DENIED.

### 4. UCL Claim

Plaintiff's Third Cause of Action alleges unfair business practices against all Defendants.  California's UCL statute prohibits "any unlawful, unfair, or fraudulent

business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. UCL claims are derivative in nature. Ikon Office Solutions, Inc. v. Rezente, No. Civ. 2:10-1704 WBS-KJM, 2010 WL 5129293, at *5-6 (E.D. Cal., Dec. 9, 2010). As alleged, the UCL claim is based on the unfair business practices of PNC and the unlawful foreclosure sale by Vida.

Defendant PNC argue that this claim fails because Plaintiff (1) does not have standing to bring the UCL claim, (2) cannot show resulting harm from PNC's actions, (3) plaintiff is not entitled to any relief under the UCL, and (4) since "each and every one of Plaintiff's claims fail" her derivative UCL claim also fails.[6]

Defendant PNC's first two arguments can be combined into one general argument against standing. Persons bringing UCL claims must have both "suffered an injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. In support, Defendants rely on Jenkins v. JPMorgan Chase Bank, N.A., 216 Cal. App. 4th 497 (2013), to argue Plaintiff cannot demonstrate a "causal link between her economic injury and the alleged unlawful acts." Defs.' Mot. Summ. J. at 20, ECF No. 116.[7] Defendant PNC in essence claims Plaintiff cannot meet either prong and consequently cannot demonstrate standing for UCL purposes. As to the first prong, injury, Defendant PNC points to undisputed facts indicating they do not have possession of Plaintiff's property, did not foreclose on the property, nor did Plaintiff lose equity above the SDoT at the time of the foreclosure sale. "Accordingly, Plaintiff has not lost any money or property that is subject to disgorgement or restitution." Defs.' Mot. Summ. J. at

---

[6] The fourth argument fails since "each and every one of Plaintiff's claims" do not fail. See supra.

[7] In Jenkins, the California Court of Appeals found that because the UCL claim presented there stemmed from allegedly wrongful foreclosure, and since plaintiff lacked standing to challenge the validity of the loan's assignment which preceded that foreclosure, the requisite causal link required to state the claim was necessarily absent. Jenkins v. JPMorgan Chase Bank, N.A., 216 Cal. App. 4th 497 (2013), abrogated by Yvanova v. New Century Mortgage Corp., 62 Cal. 4th 919 (Cal. 2016). In Yvanova, the California Supreme Court overturned Jenkins' holding in that regard. 62 Cal. 4th 919, 939 (Cal. 2016). "A foreclosed-upon borrower clearly meets the general standard for standing to sue by showing an invasion of his or her legally protected interests. Moreover, the bank or other entity that ordered the foreclosure would not have done so absent the allegedly void assignment. Thus, the identified harm—the foreclosure—can be traced directly to [the foreclosing entity's] exercise of authority purportedly delegated by the assignment." Id. at 937 (internal citations and quotations omitted).

13

14, ECF No. 116. Plaintiff disputes this characterization, stating: "These facts are undisputed. They are also immaterial in the Plaintiff's UCL claim." Pl.'s Opp. Defs.' Mot. Summ. J. at 7, ECF No. 120. This Court agrees.

The California Supreme Court has held that a plaintiff can demonstrate an economic injury as contemplated by § 17204 in "innumerable ways," including four general categories: (1) the plaintiff surrendering more or acquiring less in a transaction than the plaintiff otherwise would have; (2) the plaintiff suffering the diminishment of a present or future property interest; (3) the plaintiff being deprived of money or property to which the plaintiff has a cognizable claim; or (4) the plaintiff being required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. Kwikset Corp v. Superior Court, 51 Cal. 4th 320, 323 (2011).

The Plaintiff's injury can be properly placed in either the second or third of these categories. She seeks to vindicate her real property rights, and to that end has demonstrated a genuine dispute of material facts as to her legally protected property interests. Given the genuine dispute of material facts regarding voidability of the SDoT, for the purposes of the instant motion, the Plaintiff's alleged injury is sufficient for the economic injury prong of UCL standing against all Defendants.

Turning to the second statutory prong under which causation must be demonstrated, Defendants argue that much like the plaintiff in Jenkins, the Plaintiff caused her own harm by defaulting on the loan to begin with. Defs.' Mot. Summ. J. at 14-15, ECF No. 116. Thus, according to Defendants, the Plaintiff cannot demonstrate a "causal link between PNC's acts and her economic injury." Id. Defendant PNC, however, misconstrues the requisite causal link. Plaintiff argues that PNC's unfair or unlawful conduct was cancelling the debt, then deeming the debt not cancelled, receiving tax benefits on their actions, and finally selling the SDoT to a third party, who then began foreclosure proceedings against Plaintiff. Pl.'s Opp. Defs.' Mot. Summ. J., ECF No. 120. And as against Vida, Defendant Vida initiated an unlawful foreclosure proceeding against the Plaintiff. Id.

| | |
|---|---|
| 1 | The undisputed material facts demonstrate the causal chain between Defendant |
| 2 | PNC's allegedly unlawful act, assigning a potentially void instrument, and the damage to |
| 3 | Plaintiff's credit score deprivation of her property rights.  UMF Nos. 15, 42; Pl.'s Opp. |
| 4 | Defs.' Mot. Summ. J., ECF No. 120.  Similarly, the undisputed facts detail how PNC |
| 5 | assigned the allegedly void SDoT to BSI to USMR to Vida, who initiated the foreclosure |
| 6 | proceedings.  Defs.' Mot. Summ. J., ECF 116.  And finally, Vida's unlawful foreclosure |
| 7 | proceeding resulted in further injury to the Plaintiff's "property to which [she] has a |
| 8 | cognizable claim."  As such, the Plaintiff has standing to bring a UCL claim against both |
| 9 | Defendants. |
| 10 | Defendant PNC's third argument, that Plaintiff is not entitled to relief under the |
| 11 | UCL, is also unpersuasive.  Defendant is correct that the UCL is generally limited to |
| 12 | injunctive relief and restitution.  Clark v. Superior Court, 50 Cal. 4th 605, 614 (2010).  As |
| 13 | used in the UCL, however, restitution is broad enough to allow a plaintiff to recover |
| 14 | money or property in which he or she had a vested interest.  Korea Supply Co. v. |
| 15 | Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003).  Because Plaintiff and |
| 16 | Defendants dispute the validity of the SDoT and subsequent assignments thereof, their |
| 17 | disagreement necessarily turns on property in which the Plaintiff has a vested interest, |
| 18 | and whether she can be restored to her prior position with respect to that property   If |
| 19 | Plaintiff prevails, any gain that Defendant PNC received as a result of assigning the |
| 20 | SDoT can be disgorged, as can any benefit Defendant Vida obtained as a result of the |
| 21 | foreclosure sale. |
| 22 | Having dispensed with Defendants' arguments for summary adjudication as to |
| 23 | Plaintiff's UCL claim three, the Court DENIES Defendants' motion as to the Third Cause |
| 24 | of Action. |

### 5. Declaratory Relief Claim

26 Plaintiff's Fifth Cause of Action against all Defendants is for declaratory relief.
27 Defendants argue that "no actual controversy" exists, claiming that because the 1099-C
28 form had no effect on the SDoT, all of the Plaintiff's claims, which depend on a finding

otherwise, must fail.  Defendants accordingly reason that as derivative claim, Plaintiff's request for declaratory relief must likewise fail.  Defs.' Mot. Summ. J., ECF No. 116.  The existence of "an actual controversy relating to the legal rights and duties of the respective parties" is necessary to maintain an action for declaratory relief.  Ludgate Ins. Co. v. Lockheed Martin Corp., 82 Cal. App. 4th 592, 605 (2002).  As set forth above, however, Plaintiff here has demonstrated there is a genuine dispute of material fact as to the validity of the SDoT, which provides "an actual controversy relating to the legal rights and duties" of Defendants PNC and Vida.  Id.  Therefore, the Court DENIES Defendants' Motion for Partial Summary Adjudication as to the Fifth Cause of Action.

### B.    Remaining Claims

Finally, Defendants seek summary adjudication of Plaintiff's negligence and breach of contract claims (her Fourth and Sixth Causes of Action) as a matter of law.  As to the former, Defendants argue they did not owe Plaintiff a duty as a matter of their lender-borrower relationship.  And as to the latter, Defendants argue Plaintiff was not a third-party beneficiary to the settlement agreement, therefore, Plaintiff cannot sue for breach of contract.

#### 1.    Breach of Contract

Plaintiff's breach of contract claim is for injury suffered as an alleged third-party beneficiary of a settlement agreement Defendant PNC reached with the United States Government.

California Civil Code § 1559 states: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  A recent California Supreme Court case determined the applicable elements for a third-party beneficiary claim.  Goonewardene v. ADP, LLC, 6 Cal. 5th 817, 830 (2019).  In order to prevail on a breach of contract claim as a third-party beneficiary, the Plaintiff must demonstrate that the express language of the contract and relevant circumstances under which contract was agreed to indicate (1) the plaintiff would in fact benefit from the contract; (2) a motivating purpose of the contracting parties was to provide a benefit the

plaintiff; and (3) permitting the plaintiff to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. Id.

The Defendants' argument regarding the breach of contract claim are persuasive. First, under the express terms of the settlement agreement a Plan Administrator was appointed to handle payments and relief to borrowers affected by the settlement. Plaintiff has presented no evidence that the SDoT here was implicated in this settlement in any way. UMF No. 65. Nor has Plaintiff received any notice, settlement check, or release related to any such settlement. UMF Nos. 62-64. Plaintiff has provided no evidentiary support to support any of the aforementioned elements for a third-party beneficiary claim. Even though we must construe all evidence in a light most favorable to the non-moving party, Defendants have nonetheless adequately demonstrated that there is no issue of material fact and that they are entitled to a judgment as a matter of law as to any third-party beneficiary claim. Thus, the Court GRANTS Defendants' Motion for Summary Adjudication as to the Sixth Cause of Action for breach of contract

### 2. Negligence Claim

Under California law, prima facie negligence requires that four elements be established: (1) the defendant had a legal duty to conform to a standard of conduct to protect the plaintiff; (2) the defendant failed to meet that standard of conduct; (3) the defendant's failure was the proximate or legal cause of the resulting injury; and (4) the plaintiff was damaged. Ladd v. County of San Mateo, 12 Cal. 4th 913, 917 (1996). Defendants argue they owe Plaintiff no legal duty, citing Nymark v. Heart Federal Savings, 231 Cal. App. 3d 1089 (1991). Lenders generally do not owe borrowers a legal duty for actions within the scope of the lender–borrower relationship. Id. Thus, the importance of the SDoT is apparent once more. Since there is a genuine dispute of material fact as to the validity of the SDoT once the Form 1099-C was issued, however, this argument cannot stand. If Defendant PNC did, in fact, cancel the loan, then it severed the lender-borrower relationship and the Defendant could owe the Plaintiff a

17

duty of care. Having failed to meet their burden to demonstrate no genuine dispute of material fact as to the claim, the Court DENIES the Defendants' request for summary adjudication as to the Fourth Cause of Action.

**CONCLUSION**

Because the primary issue underlying Plaintiff's claims (whether the debt she owed on the Second Deed of Trust was indeed cancelled) depends on many conflicting or ambiguous factual determinations, this Court DENIES Defendants' Motion, ECF No. 116, as to the First, Second, Third, Fourth and Fifth Causes of Action contained within the SAC. Those claims allege wrongful foreclosure, cancellation of recorded instruments, unfair business practices, negligence, and declaratory relief, respectively. As to the final Sixth Cause of Action, however, for breach of contract, summary adjudication is GRANTED.

IT IS SO ORDERED.

Dated: May 14, 2021

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE