UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENET HABTEMARIAM, | No. 2:16-cv-01189-DC-AC |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT PNC BANK, NATIONAL ASSOCIATION'S SECOND MOTION FOR SUMMARY JUDGMENT |
| PNC BANK, NATIONAL ASSOCIATION, et al., | |
| Defendants. | (Doc. No. 194) |

This matter is before the court on Defendant PNC Bank, National Association's ("PNC Bank") second motion for summary judgment. (Doc. No. 194.) Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 198.) For the reasons explained below, the court will deny Defendant PNC Bank's motion.

**BACKGROUND**

**A.     Factual Background[1]**

In 2001, Plaintiff Genet Habtemariam bought a house located at 7 Shipman Court, Sacramento, California 95823 (the "Property"). (DUF ¶ 1.) Plaintiff obtained a $348,000 loan from Gateway Bank secured by a first deed of trust on the Property in March 2007. (DUF ¶ 2.)

---

[1] This relevant factual background is undisputed, except where otherwise noted. The court will refer to Defendant PNC Bank's undisputed facts (Doc. No. 194-1) as "DUF" and Plaintiff's undisputed fact (Doc. No. 196-4) as "PUF."

1

Shortly thereafter, in June 2007, Plaintiff obtained a $43,500 loan from National City Bank secured by a second deed of trust on the Property. (DUF ¶ 3.) National City Bank later merged with Defendant PNC Bank. (DUF ¶ 4.)

In April 2009, Plaintiff defaulted on her loan from National City Bank. (DUF ¶ 5.) In February 2010, Defendant PNC Bank "charged off" Plaintiff's loan from National City Bank.[2] (DUF ¶ 6.)

A few months later, in June 2010, Plaintiff received a 1099-C form titled "Cancellation of Debt" from Defendant PNC Bank. (DUF ¶ 7.) That form stated that $46,134.46 was the "amount of debt canceled." (DUF ¶ 7.) Plaintiff expected Defendant PNC Bank would send her "some sort of clearance to give [her] deed [of trust] back," but Plaintiff never received such clearance. (DUF ¶ 14.)

Since 2010, Plaintiff has checked her credit score at least once a year. (DUF ¶ 8.) In 2010, Plaintiff was aware that her credit report reflected Defendant PNC Bank's reporting of her National City Bank loan. (DUF ¶ 9.) In 2011, Plaintiff attempted to rent a property for her business but was unable to do so because of her "poor credit," which included Defendant PNC Bank's reporting of Plaintiff's National City Bank loan. (DUF ¶ 13.) Plaintiff has had no other "credit problems or issues" besides her National City Bank loan and a dispute about her loan from Gateway Bank, which was resolved in 2009. (DUF ¶ 12.) Between 2010 and 2017, Defendant PNC Bank reported Plaintiff's National City Bank loan along with the loan's outstanding balance to credit reporting agencies as "180 days past due." (DUF ¶ 10.) Plaintiff did not rely on what PNC Bank reported to the credit reporting agencies, however, and instead relied on her receipt of the 1099-C form from PNC Bank reflecting the cancellation of the debt in believing that she was

/////

/////

---

[2] Plaintiff does not dispute that Defendant PNC Bank "charged off" the National City Bank loan in February 2010, but she asserts that the term "charged off" is "vague, ambiguous, and calls for a legal conclusion." (Doc. No. 196-1 at 2.) In its reply, Defendant PNC Bank acknowledges the "quibble" over the ambiguity of the term but does not offer any clarification as to its intended meaning. (Doc. No. 199 at 1.)

2

1  no longer expected to make payments on the National City Bank loan.³ (PUF ¶ 1.)

2  In May 2012, Plaintiff received a letter from Defendant PNC Bank stating that servicing of her National City Bank loan would be transferred to BSI Financial Services, Inc. (DUF ¶ 15.) Through a series of assignments, the National City Bank loan and the second deed of trust was ultimately transferred to Defendant Vida Capital Group, LLC ("Vida Capital Group"). (DUF ¶ 16.) In February 2016, Defendant Vida Capital Group foreclosed on the Property and upon sale, a trustee's deed was recorded conveying the Property to Defendant Vida Capital Group. (DUF ¶ 17.)

**B.     Procedural Background**

On April 19, 2016, Plaintiff filed a complaint initiating this action against Defendants PNC Bank, Vida Capital Group, U.S. Mortgage Resolution, and Gateway Bank N.A.⁴ (DUF ¶ 18.) In her SAC, Plaintiff asserts a (1) wrongful foreclosure claim against Defendant Vida Capital Group and the following causes of action against both Defendants PNC Bank and Vida Capital Group: (2) cancellation of recorded instruments; (3) unfair competition claim ("UCL"); (4) negligence; (5) declaratory relief; and (6) breach of contract. (Doc. No. 44.)

On May 22, 2020, Defendant PNC Bank filed its first motion for summary judgment in its favor on all of Plaintiff's claims brought against it. (Doc. No. 116.) Defendant Vida Capital Group joined in that motion. (Doc. No. 118.) On May 17, 2021, the court granted that motion for

---

³ The undisputed fact of Plaintiff's reliance on the 1099-C form was her only listed undisputed fact in her separate statement of undisputed facts. (Doc. No. 196-4.) In connection with its reply, Defendant PNC Bank did not respond to Plaintiff's separate statement of undisputed fact to indicate whether it disputes or does not dispute this fact. Although it does not appear from Defendant PNC Bank's reply brief that it disputes Plaintiff's undisputed fact, the court need not determine whether the fact is undisputed because the court does not rely on this fact in denying Defendant PNC Bank's pending motion.

⁴ On October 23, 2017, Plaintiff filed a request for dismissal as to Defendant Gateway Bank, N.A. (Doc. No. 74.) The court granted Plaintiff's request and dismissed Defendant Gateway Bank, N.A. on March 13, 2019. (Doc. No. 99.) Although Defendant U.S. Mortgage Resolution was initially named by Plaintiff, Defendant U.S. Mortgage Resolution is not named as a defendant in the operative second amended complaint ("SAC"). (*See* Doc. No. 44.) Thus, the court will direct the Clerk of the Court to update the docket to reflect the termination of Defendant U.S. Mortgage Resolution as of July 25, 2017, the date the SAC was filed.

1  summary judgment on Plaintiff's breach of contract claim but denied the motion with respect to
2  all other claims. (Doc. No. 122.)

3  After several years and unsuccessful settlement conferences, in March 2024, the parties
4  moved to amend the scheduling order to reopen and extend fact discovery under Federal Rule of
5  Civil Procedure 16. (Doc. No. 169.) The court granted that motion and reopened discovery for the
6  limited purpose of allowing Defendants to take discovery on Plaintiff's alleged damages,
7  including but not limited to the following topics: "(1) Plaintiff's rental of the Property located at 7
8  Shipman Court, Sacramento, CA 95823, and any income derived therefrom; (2) Plaintiff's alleged
9  continued servicing of the mortgage currently held by Gateway Bank, N.A., and (3) any
10 additional damages Plaintiff allegedly suffered since discovery closed in 2019." (Doc. No. 175 at
11 1–2.)

12 On October 14, 2024, Defendant PNC Bank moved for leave to file a second motion for
13 summary judgment based on an affirmative defense that all of Plaintiff's claims against it are
14 barred by the applicable statutes of limitations—an issue it had not raised in its first motion for
15 summary judgment. (Doc. No. 183.) Defendant PNC Bank argued that at Plaintiff's renewed
16 deposition on July 26, 2024 and August 26, 2024, she "revealed, for the first time, that in 2011
17 Plaintiff (a) discovered that PNC was not treating her second mortgage loan as forgiven or
18 canceled, and (b) suffered damage from PNC's treatment of the loan as still due and
19 delinquent"—which, according to Defendant PNC Bank, constitutes evidence showing the statute
20 of limitations period began to run 2011. (Doc. No. 183 at 2.) The court granted Defendant PNC
21 Bank's motion for leave to file a second motion for summary judgment on December 26, 2024.
22 (Doc. No. 193.)

23 On January 10, 2025, Defendant PNC Bank filed the pending second motion for summary
24 judgment in its favor on all of Plaintiff's claims against it on the grounds that those claims are
25 barred by the applicable statutes of limitations. (Doc. No. 194.) Plaintiff filed her opposition to
26 Defendant PNC Bank's motion for summary judgment on January 30, 2025. (Doc. No. 196.)
27 Defendant PNC Bank filed a reply thereto on February 3, 2025. (Doc. No. 199.)
28 /////

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at 255.

The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). "Where a defendant moves for summary judgment based on an affirmative defense (*i.e.*, an issue on which it bears the burden of proof), the defendant must establish 'all of the essential elements of the . . . defense to warrant judgment in [its] favor.'" *Menzel v. Scholastic, Inc.*, No. 3:17-cv-05499-EMC, 2019 WL 6896145, at *2 (N.D. Cal. 2019) (citation omitted); *see also Wolf v. Travolta*, 167 F.Supp.3d 1077, 1091 (C.D. Cal. 2016) ("Because the statute of limitations is an affirmative defense, defendants bear the initial burden on a motion for summary judgment of demonstrating that plaintiffs' claims are time barred.").

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish that a genuine issue as to any material facts exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). The nonmoving party may not rely upon the allegations or denials

of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The nonmoving party does not need to establish a material issue of fact conclusively in its favor to establish a factual dispute. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.

## ANALYSIS

In the pending motion, Defendant PNC Bank does not address the substantive merits of Plaintiff's claims. Rather, Defendant PNC Bank moves for summary judgment on all of Plaintiff's claims against it on the grounds that those claims are time barred. (Doc. No. 194 at 10–16.) Specifically, Defendant PNC Bank seeks summary judgment on Plaintiff's claims for cancellation of recorded instruments, unfair competition, and declaratory relief because Plaintiff filed her complaint after the applicable four-year statute of limitations period expired. (*Id.*) Similarly, Defendant PNC Bank moves for summary judgment on Plaintiff's negligence claim on the grounds that it is time barred due to the expiration of the applicable two-year statute of limitations period. (*Id.* at 16.)

**A.     Summary Judgment on Claims Based on Four-Year Limitations Period**

The parties do not dispute that four-year statute of limitations periods apply to Plaintiff's cancellation of recorded instruments, UCL, and declaratory relief claims. Indeed, the statute of limitations for a claim under California Civil Code section 3412, which allows for cancellation of a written instrument when there is "reasonable apprehension that if left outstanding [ ] may cause serious injury to a person against whom it is void or voidable," is ordinarily four years. *Robertson v. Superior Court*, 90 Cal. App. 4th 1319, 1326 (2001); *see also CitiMortgage, Inc. v. Wright*, 2016 WL 11518929, at *2 (C.D. Cal. 2016) (noting that when a cancellation claim involves fraud or mistake, the applicable limitations period is three rather than four years). Likewise, the statute of limitations for claims under the UCL, which prohibits "any unlawful, unfair, or fraudulent

6

1  business act or practice," is four years. Cal. Bus. & Prof. Code §§ 17200, 17208. A claim
2  generally does not accrue for statute of limitations purposes until it is "complete with all of its
3  elements," such as wrongdoing, harm, and causation. *See Pooshs v. Philip Morris USA, Inc.*, 51
4  Cal. 4th 788, 797 (2011).

5  In moving for summary judgment, Defendant PNC Bank argues that the four-year statute
6  of limitations period applicable to Plaintiff's claims for cancellation of recorded instruments,
7  unfair competition, and declaratory relief expired well before she filed this action. (Doc. No. 194
8  at 10–16.) In particular, Defendant PNC Bank contends Plaintiff's claims accrued in 2011—more
9  than four years before she filed her original complaint on April 19, 2016. (*Id.* at 12–13.)
10  Defendant PNC Bank contends that Plaintiff's claims accrued in 2011 because, according to PNC
11  Bank, she first suffered injury in 2011. (*Id.*) To support this contention, Defendant PNC Bank
12  points to Plaintiff's deposition testimony in 2024 in which she stated that she was aware that
13  Defendant PNC Bank's reporting of her National City Bank loan was reflected on her credit
14  report in 2010, and she was unable to rent a property for her business due to her "poor credit" in
15  2011. (DUF ¶¶ 9, 13.) Plaintiff also testified that she had no other credit problems or issues
16  besides the National City Bank loan and a dispute about a loan from Gateway Bank that was
17  resolved in 2009. (DUF ¶ 12.) In Defendant PNC Bank's view, that "testimony confirms she
18  incurred actual and appreciable harm from [Defendant PNC Bank's] allegedly wrongful act—the
19  asserted resurrection of her allegedly 'canceled' National City [Bank] [l]oan—in 2011 when
20  Plaintiff was unable to rent property for her business due to her low credit score[,] which had
21  been impaired by [Defendant PNC Bank's] negative reporting of the National City [Bank]
22  [l]oan." (Doc. No. 194 at 12.)

23  Defendant PNC Bank argues that the "harm" Plaintiff suffered from her poor credit score
24  gave rise to actionable claims against Defendant PNC Bank in 2011 under California's Consumer
25  Credit Reporting Agencies Act and California Civil Code section 2941, based on Defendant PNC
26  Bank's failure to cause recordation of a reconveyance of her second deed of trust. (*Id.* at 12–13.)
27  Defendant PNC Bank contends Plaintiff had "reasons to know" in 2011 that Defendant PNC
28  Bank was not treating the National City Bank loan as "canceled" because she was denied rental

7

1  property due to poor credit and never received a reconveyance of the deed of trust from
2  Defendant PNC Bank. (*Id.* at 14.) Defendant PNC Bank further argues that because Plaintiff had
3  "reasons to know" in 2011 that it was not treating the National City Bank loan as "canceled," she
4  was required to "conduct a reasonable investigation." (*Id.*) Defendant PNC Bank contends that if
5  Plaintiff had conducted a reasonable investigation, "she would have discovered affirmatively that
6  [Defendant PNC Bank's] negative reporting of the National City [Bank] [l]oan and its failure to
7  reconvey the deed of trust led to a singular ineluctable conclusion: the [National City Bank loan]
8  was valid, existent and enforceable (*i.e.*, not 'cancelled')." (*Id.* at 14.) Defendant PNC Bank also
9  argues that "the fact that Plaintiff suffered additional injury in 2016 from [Defendant Vida Capital
10 Group's] foreclosure did not revive Plaintiff's time-barred claim against [Defendant PNC Bank]."
11 (*Id.* at 15–16.)

12       The court finds Defendant PNC Bank's arguments to be misplaced because they do not
13 address the claims Plaintiff brings in this case. Notably, Defendant PNC Bank does not advance
14 any arguments tying the 2011 harm (denial of rental property due to Plaintiff's poor credit) to the
15 accrual of Plaintiff's cancellation of recorded instruments, UCL, and negligence claims. Instead,
16 Defendant PNC Bank argues that the harm Plaintiff suffered in 2011 gave Plaintiff actionable
17 claims against Defendant PNC Bank under California's Consumer Credit Reporting Agencies Act
18 and California Civil Code section—causes of action she does not advance in this action. As
19 Defendant PNC Bank acknowledges in it reply brief, Plaintiff "did not allege a claim for
20 inaccurate credit reporting in her [operative] second amended complaint" and "any allegedly
21 improper ongoing credit reporting bears no relevance to Plaintiff's claims against [Defendant
22 PNC Bank]." (Doc. No. 199 at 4.) Indeed, Plaintiff's claims are for "cancellation of instruments,
23 violation of the [UCL] by cancelling her debt and then selling it to a third party, [and] negligence
24 in selling a supposedly worthless deed of trust and cancelled debt to a third party and in failing to
25 record a reconveyance"—Plaintiff does not assert claims for improper credit reporting. (*Id.*)
26 Further, Defendant PNC Bank acknowledges "the damages Plaintiff seeks are for her ouster from
27 her home after foreclosure, not for harm caused by a denial of credit due to [Defendant PNC
28 Bank's] credit reporting regarding her loan." (*Id.*) Accordingly, the relevant inquiry is whether

8

1  Plaintiff's cancellation of instruments and UCL claims accrued prior to the expiration of the
2  applicable four-year statute of limitations period. As to that question, the court finds Defendant
3  PNC Bank has not met its burden on summary judgment of showing that there is no dispute of
4  material fact.
5        In her opposition to the pending motion, Plaintiff argues that Defendant PNC Bank's
6  contention that her claims accrued in 2011 lacks undisputed evidentiary support because
7  Defendant PNC Bank's "credit reporting was continuous, inconsistent, and Plaintiff was given
8  conflicting information on the status of the 1099-C" form for cancellation of debt. (Doc. No. 196
9  at 4.) Plaintiff argues there is a "myriad of disputed issues of material fact involving the 1099-C
10 and the intent to cancel the debt." (*Id.* at 5.) The court agrees. The trier of fact can draw more than
11 one inference from the evidence Defendant PNC Bank relies on—namely, Plaintiff's testimony
12 that she attempted to rent a property for her business in 2011 but was unable to do so because of
13 her poor credit, which included Defendant PNC Bank's reporting of her National City Bank loan.
14 Defendant PNC Bank presumes that Plaintiff necessarily knew that it was treating the National
15 City Bank loan as valid and not canceled because she was unable to rent property for her business
16 in 2011 due to poor credit, she was aware Defendant PNC Bank's reporting of the National City
17 Bank loan was reflected on her credit report, and she had no other "credit problems or issues."
18 (DUF ¶¶ 9, 12, 13.) Contrary to this presumption, however, this evidence does not establish that
19 Plaintiff was put on notice in 2011 that Defendant PNC Bank was not treating her National City
20 Bank loan as canceled. A reasonable trier of fact could draw other inferences and come to various
21 alternative conclusions. For example, a reasonable trier of fact could conclude that Plaintiff
22 believed her National City Bank loan would be reported on her credit regardless of whether it was
23 canceled, perhaps for the purpose of informing prospective lenders that she had not fully paid
24 back a loan, a fact the prospective lender might find relevant in evaluating Plaintiff's credit
25 history. Thus, the evidence put forth by Defendant PNC Bank on summary judgment, when
26 viewed in a light most favorable to Plaintiff as the nonmoving party, does not establish that
27 Plaintiff's claims accrued in 2011.
28       To the extent Defendant PNC Bank contends Plaintiff was required to "conduct a

reasonable investigation" into facts revealing potential causes of action in 2011 (Doc. No. 194 at 14), the evidence before the court on summary judgment does not support this contention. As discussed above, Plaintiff's cancellation of recorded instruments, UCL, and negligence claims are based upon Defendant PNC Bank's allegedly unlawful conduct in cancelling Plaintiff's debt, failing to file a release of lien, and then selling the second deed of trust to a third party that ultimately foreclosed on the Property in February 2016. (Doc. No. 44 at 6–9; DUF ¶ 17.) Thus, Defendant PNC Bank has not established that Plaintiff would have had a reason to investigate or bring those specific claims in 2011, which was before Defendant PNC Bank's conduct leading to the foreclosure of the Property in February 2016. *See e.g.*, *Westfall v. Mortg. Elec. Registration Sys., Inc.*, 2016 WL 1241520, at *5 (S.D. Cal. 2016) (holding that cancellation of recorded instruments claim was time-barred where the deed of trust and note Plaintiff sought to cancel were executed more than four years prior the filing of plaintiff's complaint).

Because there are genuine disputes of material fact and the evidence before the court on summary judgment does not establish that Plaintiff's claims accrued in 2011, Defendant PNC Bank has not met its burden of proving that Plaintiff's claims are time barred by the applicable four-year statute of limitations period. Defendant's motion for summary judgment as to these claims will therefore be denied.

**B.      Summary Judgment as to Plaintiff's Negligence Claim**

The statute of limitations for a negligence claim in California is two years. Cal. Code Civ. P. § 335.1.

Defendant PNC Bank argues that Plaintiff's negligence claim accrued in May 2012 because Plaintiff received a letter from Defendant PNC Bank at that time stating Defendant PNC Bank had transferred the servicing of the National City Bank loan to a third party. (Doc. No. 194 at 16; DUF ¶ 15.) Defendant PNC Bank argues that "transfer of loan servicing rights in the National City Bank loan was plainly inconsistent with [Defendant PNC Bank] having cancelled that loan," such that "Plaintiff unquestionably 'discovered' her claim against [Defendant PNC] upon receipt of that letter." (Doc. No. 194 at 16.)

In her opposition, Plaintiff does not address the impact of the May 2012 letter she

1    received from Defendant PNC Bank notifying her that Defendant PNC Bank had transferred the
2    servicing of the National City Bank loan to a third party, although she does not dispute that she
3    received the letter. (Doc. No. 196 at 6–7; DUF ¶ 15.) Instead, Plaintiff argues that because
4    Defendant PNC Bank purportedly canceled the debt through the issuance of a 1099-C form, its
5    objective actions were consistent with cancellation. (Doc. No. 196 at 6.)

6         As an initial matter, the court notes that Defendant PNC Bank was granted leave to file a
7    second motion for summary judgment based on the expanded factual record following Plaintiff's
8    deposition testimony in July and August 2024. (*See* Doc. No. 193.) However, in moving for
9    summary judgment on Plaintiff's negligence claim, Defendant PNC Bank does not rely on
10   Plaintiff's 2024 deposition testimony. Rather, it relies entirely on an undisputed fact known to
11   Defendant PNC Bank prior to the reopening of discovery, namely, that Plaintiff received a letter
12   from Defendant PNC Bank in 2012 stating that the servicing of her loan would be transferred to
13   BSI Financial Services, Inc. (DUF ¶ 15.) The evidence that Defendant PNC Bank cites to support
14   that asserted undisputed fact is Plaintiff's testimony from her first deposition that was taken in
15   2019. (*Id.*) For this reason, Defendant's motion as to the negligence claim is outside the scope of
16   the leave granted by the court to file a second motion for summary judgment.

17        Nevertheless, even considering Defendant PNC Bank's arguments on their substance, the
18   court finds its reliance on the May 2012 letter to be misplaced. When viewed in isolation, the
19   May 2012 letter may suggest that Defendant PNC Bank did not intend to cancel the loan, but as
20   the court explained in its prior order denying Defendants' first motion for summary judgment,
21   there is a genuine dispute of material fact regarding whether Defendant PNC Bank intended to
22   cancel the debt and "what ensued both during that time period [2010–2012] and in the years the
23   ensued." (Doc. No. 122 at 10.) In short, before receiving the May 2012 letter, Plaintiff received a
24   1099-C form from Defendant PNC Bank in June 2010 stating her debt was "canceled." (DUF
25   ¶ 7.) After Plaintiff received Defendant PNC Bank's May 2012 letter, her loan was transferred to
26   former Defendant U.S. Mortgage Resolution, which attempted to collect on the loan. (Doc. No.
27   122 at 3.) But when Plaintiff sent U.S. Mortgage Resolution a copy of the 1099-C form she
28   received from Defendant PNC Bank, U.S. Mortgage Resolution made no further attempts to

1 contact Plaintiff or foreclose on the loan. (*Id.*) A factfinder could find this evidence weighs in
2 Plaintiff's favor and supports her view that Defendant PNC Bank had canceled the debt. Given
3 these disputed facts regarding cancellation of the debt, the court cannot determine as a matter of
4 law that Plaintiff "discovered" her negligence claim against Defendant PNC Bank in May 2012,
5 when she received the letter from Defendant PNC Bank stating it had transferred the servicing of
6 the National City Bank loan to a third party.

7 Moreover, Plaintiff's negligence claim goes beyond Defendant PNC Bank's alleged
8 cancellation of the debt and failure to perform its duty to record a release of lien on the Property.
9 (*See* Doc. No. 44 at 8.) Plaintiff alleges Defendant PNC Bank unlawfully sold the assignment to
10 the second deed of trust exposing Plaintiff to an allegedly illegal non-judicial foreclosure sale that
11 occurred in 2016, nearly four years after she received the May 2012 letter and the same year she
12 filed this action. (*Id*.)

13 Thus, Defendant PNC Bank has not established that Plaintiff's negligence claim accrued
14 in 2012. Consequently, Defendant PNC Bank's motion for summary judgment on Plaintiff's
15 negligence claim on the ground that it is time barred by the two-year statute of limitations period
16 will be denied.

## CONCLUSION

For the reasons discussed above,

1. Defendant PNC Bank's second motion for summary judgment (Doc. No. 194) is DENIED;
2. The Clerk of the Court is directed to update the docket to reflect the termination of Defendant U.S. Mortgage Resolution as of July 25, 2017, the date the SAC was filed; and

/////
/////
/////
/////
/////

3.  In light of this order, the court will set a date for a final pretrial conference by separate order.

IT IS SO ORDERED.

Dated:   **August 15, 2025**

                                            Dena Coggins
                                            United States District Judge

13